# EXHIBIT

# 1



**Notice of Service of Process**

null / ALL
**Transmittal Number: 21390472**
**Date Processed: 04/09/2020**

| | |
|---|---|
| **Primary Contact:** | State Farm Enterprise SOP<br>Corporation Service Company- Wilmington, DELAWARE<br>251 Little Falls Dr<br>Wilmington, DE 19808-1674 |

| | |
|---|---|
| **Entity:** | State Farm Fire and Casualty Company<br>Entity ID Number  3461650 |
| **Entity Served:** | State Farm Fire and Casualty Company |
| **Title of Action:** | Monte D. Bone vs. State Farm Fire and Casualty Company |
| **Matter Name/ID:** | Monte D. Bone vs. State Farm Fire and Casualty Company (10175038) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Gwinnett County State Court, GA |
| **Case/Reference No:** | 20-C-01990-S2 |
| **Jurisdiction Served:** | Georgia |
| **Date Served on CSC:** | 04/09/2020 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Michael D. Turner<br>770-913-6229 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

FILED IN OFFICE
CLERK OF STATE COURT
GWINNETT COUNTY, GEORG
20-C-01990-S
3/23/2020 11:57 AI

*Richard T. Alexander*
CLERK OF STATE COUR

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**Monte D. Bone**
15 Heritage Way
McDonough, GA 30253

CIVIL ACTION NUMBER 20-C-01990-S2

**PLAINTIFF**

**VS**

**State Farm Fire and Casualty Company**
**RA: Corporation Service Company**
40 Technology Parkway South, Suite 300
Norcross, GA 30092

**DEFENDANT**

---

## SUMMONS

---

### TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff(s) attorney, whose name and address is:

**MICHAEL D. TURNER**
**ATTORNEYS FOR THE PLAINTIFF**
**THE HUGGINS LAW FIRM, LLC**
**110 Norcross Street**
**Roswell, GA 30075**
770-913-6229
mdturner@lawhuggins.com

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ___**23RD**___ day of ___**MARCH**___, 2 0 2 0.

Richard T. Alexander, Jr.,
Clerk of State Court

BY: *Nahtifa Store*
Deputy Clerk

E-FILED IN OFFICE - P
CLERK OF STATE COUR
GWINNETT COUNTY, GEORG
20-C-01990-S
3/23/2020 11:57 AI

CLERK OF STATE COUR

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

MONTE D. BONE,                          )
                                        )
    **Plaintiff,**                      )
                                        )   **CIVIL ACTION FILE NO.:**
v.                                      )      20-C-01990-S2
                                        )   _____
STATE FARM FIRE AND CASUALTY            )
COMPANY,                                )
 a foreign corporation,               )
                                        )
    **Defendant.**                     )

### VERIFIED COMPLAINT

**COMES NOW** Plaintiff Monte D. Bone, by and through counsel, and files this Complaint

for breach of first party property insurance contract and bad faith denial of insurance coverage

against Defendant, STATE FARM FIRE AND CASUALTY COMPANY, and in support hereof,

states as follows:

### PARTIES

1.

Plaintiff is an adult resident citizen of Henry County, Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company, registered to

transact business in, and in fact transacts business in, the State of Georgia. Defendant is in the

business of insuring risks and properties located throughout the United States, including

Georgia. Defendant maintains an office at 40 Technology Parkway South, Suite 300, Norcross,

GA 30092 where it may be served with process through its registered agent, Corporation Service

Company, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of insurance claim, and the Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the State of Georgia, and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has a registered agent doing business in Gwinnett County pursuant O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

In consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued its Policy No. 11-BZ-U116-1 (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit "A." The Policy insures against property damage to Plaintiff's home located at 15 Heritage Way, McDonough, GA 30253 (the "Insured Property" or the "home"), and the Policy likewise insures against loss of collapse damage. Specifically, the Policy provides coverage for "Dwelling including attached structures" and "Personal property owned or used by an insured person" with a deductible of $1,063.00 per occurrence. See Exhibit "A".

2

7.

The Policy covers property repairs on a full replacement cost basis, "the whole amount of loss for property covered". See Exhibit "A". The Policy is an all-perils policy providing coverage for all "sudden and accidental direct physical loss to property". See Exhibit "A".

8.

The Policy covers various types of expenses, including the following mitigating expenses for up to "$5,000 for the reasonable and necessary costs you incur for temporary repairs to protect covered property from further imminent covered loss...." See Exhibit "A."

## COLLAPSE DAMAGE TO THE INSURED PROPERTY

9.

On, or about April 19, 2019, a collapse caused direct physical loss of, or damage to, the Plaintiff's home. The Policy was in effect at the time of the above-referenced storm.

10.

Plaintiff promptly and timely notified Defendant of the damage to his home as a result of the collapse, and made a claim pursuant to the Policy. As a result, Defendant assigned Bryant Van Camp ("Van Camp") to investigate Plaintiff's claim for loss of damage. Van Camp was authorized as Defendant's representative and agent for purposes of the collapse-related claim.

11.

At all times, Plaintiff made himself and his home available to, and fully cooperated with the Defendant and its representative and agent to inspect and investigate the damages caused by the collapse.

12.

Defendant, through its authorized representative and agent, Van Camp, performed a site inspection of Plaintiff's home.

3

13.

Defendant's authorized representative and agent, Van Camp, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when he undertook the handling of the disposition of the claim.

14.

Defendant, through its authorized representative and agent, Van Camp, grossly underestimated the scope of damages sustained to the Plaintiff's property as a result of the collapse event. Defendant failed to properly investigate the damages and denied coverage for Plaintiff's loss. Plaintiff therefore received $0.00 for the damage to his property. A true and accurate copy of the Defendant's denial letter is attached hereto as Exhibit "B."

15.

As a result of Defendant's gross underestimation, Plaintiff requested multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the amount of damage and the amount it will cost the Plaintiff in order to be placed in the same position they were in prior to the collapse.

16.

Plaintiff made repeated requests for payment of the claim, including written demand sent to Defendant on September 13, 2019. A true and accurate copy of the written demand is attached hereto as Exhibit "C." Despite this demand for **$52,566.09**, Defendant has continued to frivolously deny Plaintiff's claim without just cause when the obligation to settle the claim has become reasonably clear, under one or more portions of the insurance policy coverage.

4

17.

The Plaintiff's September 13, 2019, correspondence (Exhibit "C") to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to O.C.G.A. §33-4-6 guidelines. After putting Defendant on notice of a potential lawsuit, through the formal 60-Day demand, the Defendant continued to frivolously and baselessly deny Plaintiff's claim without just cause.

18.

Defendant did not act fairly and honestly toward the Plaintiff with due regard to the Plaintiff's claim when the Defendant failed to compensate the Plaintiff for his damages in direct breach of the terms and conditions of the Policy when under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward the Plaintiff, and with due regard for his interests.

19.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

20.

There exists a genuine, justifiable controversy between the Plaintiff and Defendant as to whether Defendant is responsible for coverage for the replacement cost of the actual physical damage to Plaintiff's home caused by the collapse that occurred on April 19, 2019. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incurring additional expenses, and file this lawsuit.

21.

Plaintiff has suffered physical damage to his home in an amount to be determined at trial.

## COUNT I: BREACH OF CONTRACT

22.

Plaintiff adopts, re-alleges, and incorporate his allegations set forth in Paragraphs 1-21 of this Complaint as if fully set forth herein.

23.

Plaintiff has performed all conditions to the Defendant's obligation to perform under the Policy, including without limitation, the timely payment of premiums, timely notice of the claim, mitigated the property, and or the Defendant has waived any and all other conditions.

24.

Defendant is required to compensate the Plaintiff for all direct physical losses under the terms of the Policy.

25.

Despite Plaintiff's timely written demand that Defendant pay the covered losses, Defendant has frivolously and baselessly failed, and refused to pay Plaintiff's claim under the terms of the Policy, causing further delay in restoring Plaintiff's property to its pre-loss condition.

26.

Defendant has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiff's claim according to the terms of the Policy.

27.

Defendant has used the tactic of denying compensation to the Plaintiff for his covered losses that were sustained due to the collapse. Further, Defendant has used the tactic of delaying payment to the Plaintiff in an effort to misrepresent the language of the Policy.

6

28.

As a result of the Defendant's tactic of denying and delaying Plaintiff's claim, the Plaintiff has sustained covered losses from direct physical damage to the insured property in an amount to be determined at trial. In addition, Plaintiff has further covered losses from mitigation and temporary repairs in an amount to be determined at trial.

29.

As a direct result of Defendant's breaches of its respective insurance contract, Plaintiff has been damaged and continues to suffer significant damages.

30.

All of the foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

31.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II: BAD FAITH

32.

Plaintiff adopts, realleges, and incorporate his allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

Defendant has acted frivolously and without a reasonable basis or justification in contravention of its duty of good faith and faith dealing to achieve a proper disposition of the Plaintiff's claim.

7

34.

Defendant has not attempted in good faith to settle the Plaintiff's claim when, under all the circumstances it could and should have done so had it acted fairly and honestly toward the Plaintiff and with due regard for his interests, namely, but not limited to:

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue. See O.C.G.A. § 33-6-34(1);

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies. See O.C.G.A. § 33-6-34(2);

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies. See O.C.G.A. § 33-6-34(3);

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear. See O.C.G.A. § 33-6-34(4);

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them. See O.C.G.A. § 33-6-34(5);

(6) Refusing to pay claims without conducting a reasonable investigation. See O.C.G.A. § 33-6-34(6);

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims. See O.C.G.A. § 33-6-34(7); and

(8) When requested by the insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action. In the case of claims denials, such denials shall be in writing. See O.C.G.A. § 33-6-34(10).

8

35.

The above and foregoing actions of Defendant give rise to a cause of action for bad faith as the Defendant has frivolously and without a reasonable basis refused to pay Plaintiff's covered loss within sixty (60) days after Plaintiff's timely written demand (Exhibit "C") for payment according to O.C.G.A § 33-4-6.

36.

Defendant has frivolously and without a reasonable basis used the tactic of denying compensation to the Plaintiff for his covered loss that was sustained due to the collapse. Further, Defendant has frivolously and without a reasonable basis used the tactic of delaying payment to pay the Plaintiff in an effort to misrepresent the language of the Policy.

37.

Defendant's refusal to pay Plaintiff's covered losses was done frivolously, without a reasonable basis, and otherwise, in bad faith.

38.

Defendant's breach of the Policy it sold to the Plaintiff is in bad faith, and, pursuant to O.C.G.A. § 33-4-6, Defendant is obligated in bad faith, and, as such, Plaintiff is entitled to all damages, whether foreseeable or not, that are a direct result of Defendant's intentional failure to perform, including a penalty of an additional fifty percent (50%) of the value of the claim, attorneys' fees, and Plaintiff's consultant and expert fees.

39.

Pursuant to O.C.G.A. § 33-4-6, Defendant is obligated to pay any amounts owed to the Plaintiff within sixty (60) days of receipt of formal demand and have failed to do so. As a result of that frivolous failure – which was arbitrary, capricious, and without a reasonable basis –

Defendant is liable for all amounts due under its respective policy plus fifty percent (50%), pursuant to O.C.G.A. § 33-4-6.

40.

Pursuant to O.C.G.A. § 33-6-34, Defendant owed Plaintiff a duty of good faith and fair dealing and had an affirmative duty to adjust Plaintiff's claim fairly and promptly and to make a reasonable effort to settle claims with the insured when, under all the circumstances it could and should have done so had it acted fairly and honestly. Because Defendant has breached these duties, it is liable to Plaintiff for all damages as a result of the breach, including but not limited to those specified in O.C.G.A. § 33-4-6.

41.

Pursuant to O.C.G.A. § 33-6-34, Defendant breached its duty of good faith and fair dealing and its affirmative duty to adjust claims fairly and promptly when it failed to pay the Plaintiff when it refused to conduct a reasonable investigation of Plaintiff's claim. Moreover, such failure was arbitrary, capricious, and without probable cause.

42.

As a result, pursuant to O.C.G.A. § 33-4-6, Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5,000.00, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer." Plaintiff is entitled, in addition to its covered losses set forth herein, to a statutory award of reasonable attorneys' fees in prosecuting this action, along with a statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, under O.C.G.A. § 33-4-6 for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's loss claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

10

## COUNT III: ATTORNEY'S FEES

43.

Plaintiff adopts, re-alleges, and incorporate his allegations set forth in Paragraphs 1-42 of this Complaint as if fully set forth herein.

44.

Defendant has acted in bad faith, and has been stubbornly and maliciously litigious and has caused Plaintiff unnecessary trouble and expense.

45.

Under the circumstances, Defendant is liable to Plaintiff for all of Plaintiff's costs and expenses of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. § 9-15-14, O.C.G.A. § 13-6-11.

## DEMAND FOR JURY TRIAL

46.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

47.

**WHEREFORE,** Plaintiff request that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receive any and all damages at law to which he is justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses and temporary repairs.

11

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000.00, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff's claim without a reasonable basis;

d. Plaintiff's attorneys' fees and costs of suit in this action;

e. Plaintiff's consultant and expert fees;

f. Pre- and post-judgment interest in the maximum amount allowed by law;

g. All statutory penalties;

h. Any and all applicable multipliers; and,

i. Any and all other relief that the Court may deem just and proper, whether such relief sounds in law or equity.


Dated, this 23rd day of March, 2 0 2 0.

RESPECTFULLY SUBMITTED,

> For: The Huggins Law Firm, LLC
>
> J. Remington Huggins, Esq.
> Georgia Bar No.: 348736
> Michael D. Turner, Esq.
> Georgia Bar No.: 216414
> Attorneys for the Plaintiffs
> 110 Norcross Street
> Roswell, GA 30075
> (o) (770) 913-6229
> (e) remington@lawhuggins.com
> (e) mdturner@lawhuggins.com

12

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

MONTE D. BONE,                          )
                                        )
    **Plaintiff,**                    )
                                        )          **CIVIL ACTION FILE NO.:**
v.                                      )          **20-C-01990-S2**
                                        )
STATE FARM FIRE AND CASUALTY            )
COMPANY,                                )
 a foreign corporation,                )
                                        )
    **Defendant.**                    )

## VERIFICATION OF COMPLAINT

    PERSONALLY APPEARED before the undersigned attesting officer, duly authorized by law to administer oaths, **MONTE D. BONE,** Plaintiff herein, who after duly sworn, deposes and says that the facts stated in the attached Verified Complaint are true and correct to the best of his knowledge and belief.


                                         _Monte D Bone_
                                         MONTE D. BONE, PLAINTIFF

Sworn to and subscribed before me this 4th day of ___Fybruary___, 2020.


___Terri Bone___
NOTARY PUBLIC: _____
My Commission Expires on: _Dec 8, 2022_

# EXHIBIT A

**State Farm Fire and Casualty Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

*11350 Johns Creek Parkway*
*Duluth, GA 30098-0001*

AT2          H-27-1323-FB7D  F H W
     003314  3200
BONE, MONTE D
15 HERITAGE WAY
MCDONOUGH GA  30253-6065

**State Farm®**

## RENEWAL DECLARATIONS

**AMOUNT DUE:**                                None
Payment is due by  **BILLED THROUGH SFPP**

**Policy Number:**   11-BZ-U116-1

**Policy Period:**   12 Months
**Effective Dates:** MAR 07 2019 to MAR 07 2020
The policy period begins and ends at 12:01 am standard
time at the residence premises.

**Homeowners Policy**

**Location of Residence Premises**
15 HERITAGE WAY
MCDONOUGH GA  30253-6065

**Your State Farm Agent**
BILL THOMPSON
125 GLYNN ST N
FAYETTEVILLE GA   30214-1619

**Phone:** (770) 460-0178

| Construction: | Frame |
|---|---|
| Year Built: | 1973 |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules,
and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lien-
holder written notice in compliance with the policy provisions or as required by law.

**IMPORTANT MESSAGES**

NOTICE: Information concerning changes in your policy language is included.  Please call your agent with any questions.
Please help us update the data used to determine your premium. Contact your agent with the year each of
your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

**PREMIUM**

| | |
|---|---|
| Annual Premium | $1,360.00 |
| *Your premium has already been adjusted by the following:* | |
| Home Alert Discount          Home/Auto Discount | |
| Claim Record Discount | |
| **Total Premium** | **$1,360.00** |

Prepared  JAN 14 2019
H0-2000
022468_420
N    GA,GB,DR,6T,R7,F1

*Thanks for letting us serve you. We appreciate our long term customers.*

Page  1 of  4

(w5f1008B) 04-04-2016

**StateFarm**

| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS |
|---|---|
| BONE, MONTE D | |

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Dwelling | $ 210,600 |
| Other Structures | $ 21,060 |
| B Personal Property | $ 157,950 |
| C Loss of Use | $ 63,180 |
| Fungus (including Mold) Limited Coverage | $ 10,000 |

**Additional Coverages**

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $ 100,000 |
| Damage to the Property of Others | $ 1,000 |
| M Medical Payments to Others (Each Person) | $ 1,000 |

## INFLATION

Inflation Coverage Index: 252.1

## DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses 1/2% | $ 1,053 |

## LOSS SETTLEMENT PROVISIONS

A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

JAN 14 2019

HO-2000

11-BZ-U116-1                                               **State Farm**

## FORMS, OPTIONS, AND ENDORSEMENTS



| | |
|---|---|
| HW-2111 | Homeowners Policy |
| Option ID | *Increase Dwlg up to $42,120 |
| Option OL | *Ordinance/Law   10%/  $21,060 |
| Option JF | Jewelry and Furs $1,500 Each |
| | Article/$2,500 Aggregate |
| HO-2584 | *Fungus (Incl Mold) Limited Cov |
| HO-2444 | *Back-Up Of Sewer Or Drain - |
| | 5% of Coverage A/$ 10,530 |
| HO-2465 | *Fungus (Incl Mold) Liability |
| | *New Form Attached |

## ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

### Other limits and exclusions may apply - refer to your policy

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm Fire and Casualty Company.

**Participating Policy**

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yowell*
Secretary

*Michael Tipsord*
President

Prepared  JAN 14 2019                                      Page 3 of 4
HO-2000
022469   420
N

**State Farm**

**Your coverage amount....**
It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit at least equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an Xactware estimate using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home.   State Farm® does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

HO-2000

11-BZ-U116-1      022470

## HO-2584 FUNGUS (INCLUDING MOLD) LIMITED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

SECTION I – LOSSES NOT INSURED 2.g., Fungus (SECTION I – LOSSES NOT INSURED 1.g. if *you* have a RENTERS POLICY), does not apply to the extent coverage is provided by this endorsement.

SECTION I – ADDITIONAL COVERAGES

The following is added:

Remediation of Fungus.

a.  If *fungus* is the result of a *loss insured* other than fire or lightning, *we* will pay for:

(1)  any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement of that property, by *fungus*;

(2)  any remediation of *fungus*, including the cost or expense to:

(a)  remove the *fungus* from covered property or to repair, restore, or replace that property;

(b)  tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

(c)  contain, treat, detoxify, neutralize, or dispose of or in any way respond to or assess the effects of the *fungus*; or

(3)  the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

b.  *We* do not cover *fungus* that is the result of:

(1)  seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

(a)  and is:

i.  continuous;

ii.  repeating;

iii.  gradual;

iv.  intermittent;

v.  slow; or

vi.  trickling; and

(b)  from a:

i.  heating, air conditioning, or automatic fire protective sprinkler system;

ii.  household appliance; or

iii.  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item b. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the *insured*.

(2)  defect, weakness, inadequacy, fault, or unsoundness in:

(a)  planning, zoning, development, surveying, or siting;

(b)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(c)  materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(d)  maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*.

c.  This coverage applies only if:

(1)  we receive immediate notice of the occurrence of the *loss insured* that is alleged to have resulted in *fungus*, and remediation begins as soon as possible; and

(2)  all reasonable means were used to save and preserve the property from further damage at the time of and after the occurrence of the *loss insured*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
CONTINUED

HO-2584
Page 2 of 2

d.  The most *we* will pay for this *coverage*, in any one policy period, is the limit of insurance shown on the *Declarations* for this endorsement. This limit applies only to *fungus* resulting from a *loss insured* other than fire or lightning regardless of:

   (1)  the number of *losses insured* that combine or contribute to the presence of resulting *fungus*; or

   (2)  the number of claims made during the policy period.

This limit includes any payments for SECTION I – ADDITIONAL COVERAGES and COVERAGE C – LOSS OF USE. Any payments made for this coverage are part of and not in addition to the limit of insurance that applies to covered property.

All other policy provisions apply.

HO-2584

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(CONTINUED)

11-BZ-U116-1     022471

HO-2444C
Page 1 of 2

# IMPORTANT NOTICE



Effective with this policy term, **HO-2444 BACK-UP OF SEWER OR DRAIN ENDORSEMENT (Homeowners)** replaces your current Back-Up of Sewer or Drain Endorsement.

This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

## REDUCTIONS OR ELIMINATIONS OF COVERAGE

This endorsement provides coverage for losses to your dwelling and covered personal property caused by the back-up of water or sewage that enters into and overflows from a sewer or drain located in the interior of your dwelling. There are now 2 coverage options available – **either 5% or 10% of your Coverage A – Dwelling limit.** Your current coverage has been converted to one of these options. Please refer to the enclosed Renewal Declarations to see your percentage, along with the corresponding dollar limit, for Back-Up of Sewer or Drain coverage.

Depending on the limits in your current Back-Up of Sewer or Drain endorsement and your Coverage A – Dwelling limit, this may or may not be a reduction in your coverage limits.

Your new percentage and dollar limit are shown under the FORMS, OPTIONS, AND ENDORSEMENTS section of the Renewal Declarations next to "HO-2444 Back-Up of Sewer or Drain." Please review your coverage limit and contact your State Farm® agent if you would like to make any changes.

## POTENTIAL REDUCTIONS OR ELIMINATIONS OF COVERAGE

Occasionally, courts interpret the policy differently than we intended or anticipated. In order to preserve what we intended the former language to provide and to keep the policy affordable, we have made the changes indicated below. Accordingly, you should view these changes as either actual or potential reductions in or eliminations of coverage.

- Currently, coverage does not apply if the loss is caused by your negligence. This language has been changed to state that coverage does not apply to losses resulting from your failure to:
  - o keep a sump pump or its related equipment in proper working condition; or
  - o perform routine maintenance or repairs necessary to keep a sewer or drain free from obstructions.
- If you request an increase in the coverage limit for this endorsement, the increased coverage limit will not apply to losses that occur or are in progress within the first 5 days of your request.

## OTHER CHANGES

As is the case today with your current Back-Up of Sewer or Drain coverage, the "All Losses" or "Other Losses" deductible shown for Section I on the Renewal Declarations applies to each loss covered under this endorsement. However, there is no longer a minimum deductible provision.

Endorsement **HO-2444** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

## HO-2444 BACK-UP OF SEWER OR DRAIN ENDORSEMENT (Homeowners)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

The following is added to **SECTION I – ADDITIONAL COVERAGES:**

**Back-up of Sewer or Drain. We** will pay for accidental direct physical loss to the *dwelling* and covered personal

property located within the *dwelling*, caused by back-up of water or sewage, subject to the following:

a. The back-up must be directly and immediately caused solely by water or sewage:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
CONTINUED

(1) from outside the *residence premises* plumbing system that enters through a sewer or drain located inside the interior of the *dwelling*; or

(2) that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the *dwelling* designed to remove subsurface water drained from the foundation area.

b. Coverage does not apply to:

(1) losses resulting from *your* failure to:

(a) keep a sump pump or its related equipment in proper working condition; or

(b) perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

(2) losses that occur or are in progress within the first 5 days of the inception of this endorsement. This limitation does not apply when:

(a) this endorsement is attached to a newly issued policy; or

(b) this endorsement is attached to replace another Back-Up of Sewer or Drain Endorsement. However, if this endorsement's coverage limits are higher than those of the endorsement it replaces, then the limitation described in (2) above applies only to the increase in coverage limits.

c. If *you* request an increase to the coverage limit for this endorsement, the increased coverage limit does not apply to losses that occur or are in progress within the first 5 days of *your* request.

d. The total limit of insurance provided by this endorsement will not exceed the amount determined by applying the Back-Up Of Sewer Or Drain percentage (%) shown in the *Declarations* to the COVERAGE A – DWELLING limit shown in the *Declarations*, as adjusted by the inflation coverage provisions of this policy. This is an additional amount of insurance.

e. The deductible for each loss under this coverage is the amount shown in the *Declarations* under Section I Deductible for "Other Losses" or "All Losses", whichever applies.

For purposes of this endorsement only:

a. SECTION I – LOSSES INSURED, item 12.b.(2) is deleted from the policy.

b. SECTION I – LOSSES NOT INSURED, Water is replaced by:

Water, meaning:

(1) flood;

(2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

(3) waves (including tidal wave, tsunami, and seiche);

(4) tides or tidal water;

(5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Back-Up of Sewer or Drain.

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

c. SECTION I – CONDITIONS, Other Insurance is replaced by:

Other Insurance. This coverage is excess over other valid and collectible insurance.

All other policy provisions apply.

HO-2444

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

(CONTINUED)

11-BZ-U116-1     022472

HO-2465C
Page 1 of 1

# IMPORTANT NOTICE



Effective with this policy term, **HO-2465 FUNGUS (INCLUDING MOLD) LIMITATION OF LIABILITY COVERAGE ENDORSEMENT ($50,000)** replaces FE-5412 FUNGUS (INCLUDING MOLD) LIMITATION OF LIABILITY COVERAGE ENDORSEMENT.

This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

## REDUCTIONS OR ELIMINATIONS OF COVERAGE

**SECTION II – LIABILITY COVERAGES – COVERAGE L – PERSONAL LIABILITY** has been amended to state that we do not cover any loss, cost, or expense arising out of any:

- request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of fungus; or
- claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, remediating, disposing of, or in any way responding to or assessing the effective of fungus.

Endorsement HO-2465 follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is a general description of coverage and/or coverage changes and is not a statement of contract. This message does not change, modify, or invalidate any of the provisions, terms, or conditions of your policy, or any other applicable endorsements.

## HO-2465 FUNGUS (INCLUDING MOLD) LIMITATION OF LIABILITY COVERAGE ENDORSEMENT ($50,000)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

Except for the coverage provided by this endorsement, the policy to which this endorsement is attached does not apply to any claim or suit for damages because of *bodily injury* or *property damage* arising out of or resulting from *fungus*.

### SECTION II – LIABILITY COVERAGES

**COVERAGE L – PERSONAL LIABILITY** is amended to include the following:

*We* will pay up to *our* limit of liability all sums that the *insured* is legally obligated to pay as damages because of *bodily injury* or *property damage* arising out of or resulting from the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

However, *we* do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*.

### LIMIT OF LIABILITY

Regardless of the number of *insureds* under this coverage or number of claims made or suits brought, the most *we* will pay under this coverage for all claims for damages in any one *occurrence* is $50,000. This limit is also the most *we* will pay for the sum of all claims arising from all *occurrences* during each policy period.

All other policy provisions apply.

HO-2465

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars.  However, we want to point out that every policy contains limitations and exclusions.  Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# State Farm® Homeowners Policy

**Georgia**
HW-2111

# HOMEOWNERS POLICY
## TABLE OF CONTENTS

AGREEMENT ........................................1

DEFINITIONS ........................................1

DEDUCTIBLE ........................................5

SECTION I – PROPERTY COVERAGES ..................5

  COVERAGE A – DWELLING ........................5

    Dwelling ........................................5

    Other Structures ..............................5

    Property Not Covered .........................5

  COVERAGE B – PERSONAL PROPERTY ............5

    Property Covered ..............................5

    Special Limits of Liability ....................6

    Property Not Covered .........................6

  COVERAGE C – LOSS OF USE ....................8

    Additional Living Expense ....................8

    Fair Rental Value .............................8

    Prohibited Use ................................8

  SECTION I – ADDITIONAL COVERAGES ...........8

    Debris Removal ...............................8

    Temporary Repairs ...........................9

    Trees, Shrubs, and Landscaping ..............9

    Fire Department Service Charge ...............9

    Property Removed ............................9

    Credit Card, Bank Fund Transfer Card,
Forgery, and Counterfeit Money ...............9

    Power Interruption ...........................10

    Refrigerated Products ........................10

    Arson Reward ................................10

    Volcanic Action ..............................10

    Collapse .....................................10

    Locks and Remote Devices ...................11

    Fuel Oil Release .............................11

    Tear Out .....................................11

    Home Certification ...........................11

INFLATION COVERAGE ...........................11

SECTION I – LOSSES INSURED ....................12

  COVERAGE A – DWELLING .....................12

  COVERAGE B – PERSONAL PROPERTY ..........12

SECTION I – LOSSES NOT INSURED ...............14

SECTION I – LOSS SETTLEMENT .................18

  COVERAGE A – DWELLING .....................18

    A1 – Replacement Cost Loss Settlement –
Similar Construction ..........................18

    A2 – Replacement Cost Loss Settlement –
Common Construction ........................19

  COVERAGE B – PERSONAL PROPERTY ..........19

    B1 – Limited Replacement Cost Loss
Settlement ...................................19

    B2 – Depreciated Loss Settlement ............20

SECTION I – CONDITIONS ........................20

    Insurable Interest and Limit of Liability .........20

    Your Duties After Loss .......................20

    Loss to a Pair or Set .........................21

    Appraisal ....................................21

    Other Insurance .............................22

    Suit Against Us ..............................22

    Our Option ..................................22

    Loss Payment ...............................22

    Abandonment of Property ....................22

    Mortgagee Clause ...........................22

    No Benefit to Bailee .........................23

    Recovered Property .........................23

    Assignment of Claim .........................23

SECTION II – LIABILITY COVERAGES .............23

  COVERAGE L – PERSONAL LIABILITY ...........23

  COVERAGE M – MEDICAL PAYMENTS TO
OTHERS .......................................23

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

**SECTION II – ADDITIONAL COVERAGES**............24
 Claim Expenses ..................................................24
 First Aid Expenses ............................................24
 Damage to Property of Others .........................24
**SECTION II – EXCLUSIONS**..................................25
**SECTION II – CONDITIONS** ..................................28
 Limit of Liability .................................................28
 Severability of Insurance .................................28
 Duties After Loss ..............................................28
 Coverage M Requirements ...............................29
 Payment of Claim – Coverage M or Damage
 to Property of Others .........................................29
 Suit Against Us...................................................29
 Bankruptcy of an Insured .................................29
 Other Insurance – Coverage L ........................29
**SECTION I AND SECTION II – CONDITIONS**............29
 Policy Period ......................................................29
 Concealment or Fraud.......................................29
 Liberalization Clause .........................................30
 Waiver or Change of Policy Provisions ...........30
 Cancellation.......................................................30
 Nonrenewal .......................................................30
 Assignment of Policy ........................................31

 Subrogation and Reimbursement....................31
 Death...................................................................31
 Conformity to State Law ...................................31
 Premium..............................................................31
 Right to Inspect..................................................32
 Joint and Individual Interests............................32
 Change of Policy Address .................................32
 Electronic Delivery.............................................32
 Our Rights Regarding Claim Information.........32
 Duties Regarding Claim Information.................33
**OPTIONAL POLICY PROVISIONS** .............................33
 Option AI – Additional Insured..........................33
 Option BP – Business Property .......................33
 Option BU – Business Pursuits ........................33
 Option FA – Firearms ........................................34
 Option ID – Increased Dwelling Limit ..............34
 Option IO – Incidental Business ......................35
 Option JF – Jewelry and Furs...........................35
 Option OL – Building Ordinance or Law...........36
 Option SG – Silverware and Goldware
 Theft ...................................................................37

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

# HOMEOWNERS POLICY

## AGREEMENT

*We* agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true; and

4. this policy contains all of the agreements between *you* and *us* and any of *our* agents.

Unless otherwise indicated in the application, *you* state that during the five years preceding the time of *your* application for this insurance *you* have not had any losses, insured or not.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

## DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. *"actual cash value"* means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

   a. materials, including any tax;

   b. labor, including any tax; and

   c. overhead and profit;

   are subject to depreciation.

   The depreciation deduction may include such considerations as:

   a. age;

   b. condition;

   c. reduction in useful life;

   d. obsolescence; and

   e. any pre-loss damage including wear, tear, or deterioration;

   of the damaged part of the property.

2. *"bodily injury"* means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

   *Bodily injury* does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any *insured* to any other person;

   b. the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any *insured* to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

3. *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

1

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

A **building structure** includes:

a. the foundation supporting the structure, including:

   (1) slabs;

   (2) basement walls;

   (3) crawl space walls;

   (4) footings; and

   (5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b. wall-to-wall carpeting attached to the structure.

4. **"business"** means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an **insured's** principal means of livelihood. Profit and profit motive are irrelevant.

**Business** does not include:

a. volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;

b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the **insured**;

c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

d. the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss; or

e. ownership of the **residence premises** by the person or organization shown in the **Declarations** as Additional Insured.

5. **"Declarations"** means the policy **Declarations**, any amended **Declarations**, the most recent renewal **Declarations**, an Evidence of Insurance form, or any endorsement changing any of these.

6. **"diminution in value"** means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

7. **"dwelling"** means the **building structure** on the **residence premises** used as the primary private residence and includes structures attached to the **dwelling**.

8. **"fungus"** means any type or form of **fungus**, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

9. **"insured"** means:

a. **you**;

b. **your relatives**; and

c. any other person under the age of 21 in the care of a person described above.

Under Section II, **insured** also means:

d. the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by **you** or a person included in 9.b. or 9.c. above. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

e. with respect to any vehicle to which this policy applies, any person while engaged in **your** employment or the employment of a person included in 9.b. or 9.c. above.

10. **"insured location"** means:

a. the **residence premises**;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

b. the part of any other premises, other structures, and grounds used by *you* as a residence. This includes premises, structures, and grounds *you* acquire while this policy is in effect for *your* use as a residence;

c. any premises used by *you* in connection with the premises included in 10.a. or 10.b. above;

d. any part of a premises not owned by an *insured* but where an *insured* is temporarily residing;

e. land owned by or rented to an *insured* on which a one or two family dwelling is being constructed as a residence for an *insured*;

f. individual or family cemetery plots or burial vaults owned by an *insured*;

g. any part of a premises occasionally rented to an *insured* for purposes other than *business*;

h. vacant land owned by or rented to an *insured*. For the purposes of this definition, vacant land does not include:

(1) farm land;

(2) land containing a residence; or

(3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the *insured*; or

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

11. *"loss insured"* means a loss as described under **SECTION I – LOSSES INSURED, COVERAGE A – DWELLING** and **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

12. *"motor vehicle"*, when used in Section II of this policy, means:

a. a land *motor vehicle* designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational or utility vehicle" while off an *insured location*. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an *insured*. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d. a "locomotive" while off an *insured location*. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an *insured*. "Leased" does not include temporary rental;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, tele-handler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an *insured* while off an *insured location*. "Leased" does not include temporary rental; and

f. any vehicle while being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above.

The following are not *motor vehicles*:

a. a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above;

b. a motorized land vehicle in storage on an *insured location* not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c. a motorized golf cart while used for golfing purposes;

d. a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

e.  a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

13. *"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a.  *bodily injury*; or

b.  *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one *occurrence*.

14. *"property damage"* means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any *insured* is not *property damage*.

15. *"relative"* means any person related to *you* by:

a.  blood;

b.  adoption;

c.  marriage; or

d.  civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with *you*.

16. *"residence employee"* means an employee of an *insured*, or an employee leased to an *insured* by a labor leasing firm under an agreement between an *insured* and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the *residence premises*. This includes employees who perform similar duties elsewhere for *you*. This does not include employees while performing duties in connection with the *business* of an *insured*.

17. *"residence premises"* means:

a.  the one, two, three, or four family dwelling, other structures and grounds; or

b.  that part of any other *building structure*;

where *you* reside and which is shown in the *Declarations*.

18. *"State Farm Companies"* means one or more of the following:

a.  State Farm Mutual Automobile Insurance Company;

b.  State Farm Fire and Casualty Company; and

c.  subsidiaries or affiliates of either 18.a. or 18.b. above.

19. *"vacant dwelling"* means:

a.  a dwelling:

(1)  that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

(2)  where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with *your* knowledge and approval.

b.  A dwelling that is under active construction will not be considered a *vacant dwelling*. A dwelling is under active construction when it is:

(1)  being built as a new structure;

(2)  being repaired due to damage otherwise covered by this policy; or

(3)  undergoing substantial improvements, renovations, remodeling, or modifications;

and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

20. *"we"*, *"us"*, and *"our"* mean the Company shown in the *Declarations*.

21. *"you"* and *"your"* mean the person or persons shown as "Named Insured" in the *Declarations*. If a "Named Insured" shown in the *Declarations* is a human being, then *you* and *your* include:

a.  a spouse of a "Named Insured";

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

b.  a party to a civil union with a "Named Insured";

c.  a domestic partner of a "Named Insured"; or

d.  a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, *we* will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the

*Declarations*.  Deductibles will be applied per occurrence.  Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1.  **Dwelling. *We*** cover the *dwelling* and materials and supplies located on or adjacent to the *residence premises* for use in the construction, alteration, or repair of the *dwelling* or other structures on the *residence premises*.

2.  **Other Structures. *We*** cover other structures on the *residence premises*, separated from the *dwelling* by clear space.  Structures connected to the *dwelling* by only a fence, utility line, or similar connection are considered to be other structures.

    *We* do not cover other structures:

    a.  not permanently attached to or otherwise forming a part of the realty;

    b.  used either completely or in part for *business* purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone, and consists solely of activities that are:

        (1) duties of the *insured's* employment by another; and

        (2) performed solely by the *insured*; or

    c.  rented or held for rental unless:

        (1) rented to a person who is a tenant of the *dwelling*;

        (2) rented for use solely as a private garage; or

        (3) rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3.  **Property Not Covered. *We*** do not cover:

    a.  land, including the land necessary to support any Coverage A property.  *We* also do not cover:

        (1) any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

        (2) the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

    b.  trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping;** or

    c.  systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1.  **Property Covered.**

    a.  *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

        (1) owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

        (2) owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

    (3)  owned by roomers, boarders, tenants, and other residents, any of whom are related to **you**.

b.  **We** cover personal property usually located at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

    (1)  in a newly acquired principal residence for the first 30 days after **you** start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in **your** immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

    (2)  of a student who is an **insured** while located at a residence away from the **residence premises**.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a.  $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b.  $1,500 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $750 on such property away from the **residence premises**.

    Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c.  $10,000 on electronic data processing system equipment used or intended for use in a **business**, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound,

and standard media or non-media equipment for use with the above devices;

d.  $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e.  $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f.  $1,500 on trailers not used with watercraft;

g.  $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h.  $2,500 for loss by theft of firearms;

i.  $2,500 for loss by theft of silverware and goldware;

j.  $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k.  $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

    (1)  designed for assisting persons with disabilities;

    (2)  not designed for travel on public roads; and

    (3)  not subject to motor vehicle registration; and

l.  $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2.  **Property Not Covered.** **We** do not cover:

a.  articles separately described and specifically insured in this or any other insurance;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b.  animals, birds, or fish;

c.  any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k.  However, *we* do cover those vehicles or machines:

(1)  that are:

(a)  not designed for travel on public roads; and

(b)  not subject to motor vehicle registration;

(2)  and that are:

(a)  used primarily to service the *insured location*; or

(b)  designed for assisting persons with disabilities;

d.  any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system.  *We* also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e.  aircraft and parts.  This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f.  property of roomers, boarders, tenants, and other residents not related to *you*;

g.  property regularly rented or held for rental to others by an *insured*. This does not apply to property of an *insured*:

(1)  in a sleeping room when the *dwelling* is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(2)  on the *residence premises* if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h.  property rented or held for rental to others away from the *residence premises*;

i.  any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j.  books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records.  This does not apply to any recording or storage media for electronic data processing.  *We* will cover the cost of blank books, cards, or other blank material plus the cost of labor *you* incur for transcribing or copying such records;

k.  recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l.  purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m.  contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n.  outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

o.  electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

7

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

## COVERAGE C – LOSS OF USE

The most *we* will pay for the sum of all losses combined under **Additional Living Expense, Fair Rental Value,** and **Prohibited Use** is the limit of liability shown in the *Declarations* for Coverage C – Loss of Use.

1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for *your* household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy

if the damage had occurred to property on the *residence premises*;

b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

c. the action of the civil authority is taken in response to:

   (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

   (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

   (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

*We* will not pay for loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping.**

   b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a *loss insured* to Coverage A property; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(2)  the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

    (a)  the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

    (b)  a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2.  **Temporary Repairs.**  If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss.  This coverage does not increase the limit applying to the property being repaired.

3.  **Trees, Shrubs, and Landscaping.**  *We* will pay for accidental direct physical loss to outdoor:

    a.  trees, shrubs, live or artificial plants, and lawns;

    b.  artificial grass; and

    c.  hardscape property used for aesthetic purposes not permanently affixed to realty;

on the *residence premises*, caused by the following perils: **Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief**, or **Theft**.

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE A – DWELLING**. *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable.  *We* will not pay for any loss to property grown for *business* purposes.

4.  **Fire Department Service Charge.**  *We* will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion.  No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5.  **Property Removed.**  *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*.  This coverage also applies to the property

for up to 30 days while removed.  *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property.  This coverage does not increase the limit applying to the property being removed.

6.  **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

    a.  *We* will pay up to $1,000 for:

        (1)  the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name.  If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

        (2)  loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

        (3)  loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

    No deductible applies to this coverage.

    *We* will not pay more than the limit stated above for forgery or alteration committed by any one person.  This limit applies when the forgery or alteration involves one or more instruments in the same loss.

    b.  *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

    c.  Defense:

        (1)  *We* may make any investigation and settle any claim or suit that *we* decide is appropriate.  *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

        (2)  If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense.  This defense is at *our* expense by counsel of *our* choice.

        (3)  *We* have the option to defend at *our* expense an *insured* or an *insured's* bank

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a *loss insured*.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

   a. airborne volcanic shock waves;

   b. ash, dust, or particulate matter; or

   c. lava flow.

   *We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure.*

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

   a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*. Collapse does not include any of the following:

      (1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

      (2) substantial structural impairment;

      (3) imminent or threatened collapse;

      (4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

      (5) a part of a *building structure* that is standing even if:

         (a) it has separated from another part of the *building structure*; or

         (b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

   b. The collapse must be directly and immediately caused by one or more of the following:

      (1) perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.** These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

      (2) decay or deterioration of, or damage from animals, birds, or insects to:

         (a) a connector; or

         (b) a structural member of a *building structure*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

12. **Locks and Remote Devices.** *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13. **Fuel Oil Release.** *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14. **Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. *We* will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

15. **Home Certification.** If damage to covered property is caused by a *loss insured*, *we* will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

*We* will not pay:

a. any increase in cost until the repair or replacement of the property is complete; or

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the *dwelling* except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations*.

**INFLATION COVERAGE**

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I – LOSSES INSURED

**COVERAGE A – DWELLING**

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT IN-SURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

**COVERAGE B – PERSONAL PROPERTY**

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a *building structure*.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

   a. This includes:

      (1) the impact of a vehicle;

      (2) an object propelled from the tire or body of a vehicle;

      (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

      (4) a vehicle door or trunk lid being closed on personal property.

   b. This peril does not include loss:

      (1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

      (2) caused by shifting of the load being carried in or on a vehicle; or

      (3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7. **Smoke,** meaning abrupt and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

12

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

(1) committed by an *insured* or by any other person regularly residing on the *insured location*. Property of a student who is an *insured* is covered while located at a residence away from the *residence premises*, if the theft is committed by a person who is not an *insured*;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a *residence premises* rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the *residence premises* is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

    (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the *residence premises* of:

(1) property while at any other residence owned, rented to, or occupied by an *insured*, except while an *insured* is temporarily residing there. Property of a student who is an *insured* is covered while at a residence away from the *residence premises*;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the *residence premises* is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the *residence premises* for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

    (1) freezing;

    (2) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

    (3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

    (1) condensation or the presence of humidity, moisture, or vapor; or

    (2) seepage or leakage of water, steam, or sewage that is:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water or steam that is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless **you** have used reasonable care to prevent freezing; or

b. loss on the **residence premises** unless **you** have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. **We** will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the **residence premises**. **We** will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a **building structure**.

## SECTION I – LOSSES NOT INSURED

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse;**

b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or

of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if **you** have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the

14

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

*building structure* at 55 degrees Fahrenheit or higher for coverage to apply;

c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

   (1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

   (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a *vacant dwelling*;

f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

   (1) and is:

     (a) continuous;

     (b) repeating;

     (c) gradual;

     (d) intermittent;

     (e) slow; or

     (f) trickling; and

   (2) from a:

     (a) heating, air conditioning, or automatic fire protective sprinkler system;

     (b) household appliance; or

     (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item f. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the *insured*;

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

i. wet or dry rot;

j. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

   (1) Contaminants and pollutants include but are not limited to any:

     (a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

     (b) contaminants or pollutants resulting from any natural resource extraction activities; or

     (c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release.**

   (2) *We* also will not pay for:

     (a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

     (b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l. all animals, birds, or insects.

(1) This includes:

(a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

(b) costs to remove animals, birds, or insects from the covered property; and

(c) costs to prevent the animals, birds, or insects from returning to the property;

(2) However, *we* will pay for:

(a) losses caused by wild bears or deer; and

(b) the breakage of glass or safety glazing material that is a part of a *building structure*, when caused by animals, birds, or insects; or

m. pressure from or presence of tree, shrub, or plant roots.

However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from any natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

(1) earthquake;

(2) landslide, mudslide, or mudflow;

(3) sinkhole or subsidence;

(4) movement resulting from:

(a) improper compaction;

(b) site selection;

(c) natural resource extraction activities; or

(d) excavation;

(5) erosion;

(6) pressure by surface or subsurface earth or fill; or

(7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action.**

However, *we* will pay for any accidental direct physical loss by fire, explosion other than explosion of a volcano, or theft resulting from earth movement, provided the resulting loss is itself a *loss insured.*

c. **Water**, meaning:

(1) flood;

(2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

(3) waves (including tidal wave, tsunami, and seiche);

(4) tides or tidal water;

(5) overflow of any body of water (including any release, escape, or rising of any body

16

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

d. **Neglect,** meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be

considered loss caused by fire, explosion, or smoke.

However, *we* will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a *loss insured*.

g. *Fungus,* including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement of that property, by *fungus*;

(2) any remediation of *fungus*, including the cost or expense to:

(a) remove the *fungus* from covered property or to repair, restore, or replace that property;

(b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the *fungus*; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, item g. does not apply if *fungus* results from an accidental direct physical loss caused by fire or lightning.

h. **Intentional Losses.** If any *insured* intentionally causes or procures a loss to property covered under this policy, *we* will not pay any *insured* for this loss. This applies regardless of whether the *insured* is charged with or convicted of a crime.

17

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

This does not apply to:

(1) an *insured* who did not participate in, co-operate in, or contribute to causing or procuring the loss; or

(2) a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

(a) arises out of family violence against an innocent *insured*; and

(b) is caused by an intentional act of an *insured* against whom a family violence complaint is brought.

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault, or unsoundness in:

(1) planning, zoning, development, surveying, or siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

## SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

**COVERAGE A – DWELLING**

1. **A1 – Replacement Cost Loss Settlement – Similar Construction.**

a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(4) *we* will not pay for increased costs resulting from enforcement of any ordinance or

18

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

b. Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures.**

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

a. *We* will pay the cost to repair or replace with common construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING,** except for wood fences, subject to the following:

(1) *we* will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. *We* will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(4) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within

two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(5) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

b. Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures.**

**COVERAGE B – PERSONAL PROPERTY**

1. **B1 – Limited Replacement Cost Loss Settlement.**

a. *We* will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY,** except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged property;

(2) after repair or replacement is completed, *we* will pay the difference between the *actual cash value* and the cost *you* have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value.*

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

    (1)  *our* cost to replace at the time of loss;

    (2)  the full cost of repair;

    (3)  any special limit of liability described in this policy; or

    (4)  any applicable Coverage B limit of liability.

2.  **B2 – Depreciated Loss Settlement.**

    a.  *We* will pay the *actual cash value* for property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

    b.  *We* will pay market value at the time of loss for:

    (1)  antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

    (2)  articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

    (3)  property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

    (1)  *our* cost to replace at the time of loss;

    (2)  the full cost of repair;

    (3)  any special limit of liability described in this policy; or

    (4)  any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1.  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

    a.  to the *Insured* for an amount greater than the *insured's* interest; or

    b.  for more than the applicable limit of liability.

2.  **Your Duties After Loss.** After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

    a.  give immediate notice to *us* or *our* agent and also notify:

    (1)  the police if the loss is caused by theft, vandalism, or any other criminal act; and

    (2)  the credit card company or bank if the loss involves a credit card or bank fund transfer card;

    b.  protect the property from further damage or loss and also:

    (1)  make reasonable and necessary temporary repairs required to protect the property; and

    (2)  keep an accurate record of repair expenses;

    c.  prepare an inventory of damaged or stolen personal property:

    (1)  showing in detail the quantity, description, age, replacement cost, and amount of loss; and

    (2)  attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

    d.  as often as *we* reasonably require:

    (1)  exhibit the damaged property;

    (2)  provide *us* with any requested records and documents and allow *us* to make copies;

    (3)  while not in the presence of any other *insured*:

      (a)  give statements; and

      (b)  submit to examinations under oath; and

    (4)  produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so; and

    e.  submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(1)  the time and cause of loss;

(2)  interest of the **insured** and all others in the property involved and all encumbrances on the property;

(3)  other insurance that may cover the loss;

(4)  changes in title or occupancy of the property during the term of this policy;

(5)  specifications of any damaged structure and detailed estimates for repair of the damage;

(6)  an inventory of damaged or stolen personal property described in 2.c.;

(7)  receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8)  evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

3.  **Loss to a Pair or Set.** In case of loss to a pair or set, **we** may choose to:

  a.  repair or replace any part to restore the pair or set to its value before the loss; or

  b.  pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4.  **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only **you** or **we** may demand appraisal. A demand for appraisal must be in writing. **You** must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

  a.  Each party will select a competent, disinterested appraiser and notify the other party of

the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b.  The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the **actual cash value**, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute.

c.  If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

(1)  **you** or **we** may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the **residence premises** is located to select an umpire;

(2)  the party requesting the selection described in item c.(1) must provide the other party:

   (a)  written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

   (b)  a copy of the written application; and

(3)  a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute. In all instances the written report of agreement will be itemized and state separately the **actual cash value**, replacement cost, and if applicable, the market value of each item in dispute.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

d. To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

   (1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

   (2) an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

   (3) a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e. A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

   (1) has performed services for either party with respect to the claim at issue in the appraisal; or

   (2) has a financial interest in the outcome of the claim at issue in the appraisal.

f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by **you** and **us**.

g. **You** and **we** do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

   (1) any other questions of fact;

   (2) questions of law;

   (3) questions of coverage;

   (4) other contractual issues; or

   (5) to conduct appraisal on a class-wide basis.

i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action will be brought against **us** unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

   However, if the action results from a loss caused by fire or lightning, the action must be started within two years after the date of loss or damage.

7. **Our Option.** **We** may repair or replace any part of the property damaged or stolen with similar property. Any property **we** pay for or replace becomes **our** property.

8. **Loss Payment.** **We** will adjust all losses with **you**. **We** will pay **you** unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after **we** receive **your** proof of loss and:

   a. reach agreement with **you**;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with **us**.

9. **Abandonment of Property.** **We** need not accept any property abandoned by an **insured**.

10. **Mortgagee Clause.** The word "mortgagee" includes trustee.

   a. If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and **you**, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

b. If *we* deny *your* claim that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   (1) notifies *us* of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

   (2) pays on demand any premium due under this policy, if *you* have not paid the premium; and

   (3) submits a signed, sworn statement of loss within 60 days after receiving notice from *us* of *your* failure to do so. Policy conditions relating to **Appraisal**, **Suit Against Us**, and **Loss Payment** apply to the mortgagee.

c. If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect. Proof of mailing will be proof of notice.

d. If *we* pay the mortgagee for any loss and deny payment to *you*:

   (1) *we* are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   (2) at *our* option, *we* may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, *we* will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** *We* will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Recovered Property.** If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice. At *your* option, *you* may keep the property or *we* will return it to *you*. Otherwise, it will become *our* property. If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

13. **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and

2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

   a. arises out of a condition on the *insured location* or the ways immediately adjoining;

23

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

b. is caused by the activities of an *insured*;

c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

**SECTION II – ADDITIONAL COVERAGES**

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend. Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

   c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

   d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on that part of the damages *we* pay; or

      (1) that part of the damages *we* pay; or

      (2) the Coverage L limit; and

   e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** *We* will pay expenses for first aid to others incurred by an *insured* for *bodily injury*

covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

   a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

   b. *We* will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) the limit of liability shown in the *Declarations* for **Damage to Property of Others** for any one *occurrence*.

   c. *We* will not pay for *property damage*:

      (1) for a loss that is recoverable under Section I of this policy. *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

      (2) caused intentionally by an *insured* 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

      (4) arising out of:

         (a) *business* pursuits;

         (b) any act or omission in connection with a premises an *insured* owns, rents, or controls, other than the *insured location*;

         (c) a condition on the *insured location* or the ways immediately adjoining; or

         (d) the ownership, maintenance, or use of a *motor vehicle*, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

      (5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same *property damage*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

# SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. *bodily injury* or *property damage* that:

      (1) was a result of a:

         (a) willful and malicious; or

         (b) criminal;

         act or omission of the *insured*;

      (2) was intended by the *insured*; or

      (3) would have been expected by the *insured* based on a reasonable person standard.

      However, exclusions a.(2) and a.(3) above do not apply to *bodily injury* or *property damage* resulting from the use of reasonable force to protect persons or property.

      Exclusions a.(1), a.(2), and a.(3) above apply to all *bodily injury* or *property damage* even if the:

      (1) *bodily injury* or *property damage* was sustained by a different person, entity, or property than was expected or intended;

      (2) *bodily injury* or *property damage* was of a different kind, quality, or degree than was expected or intended;

      (3) *insured* lacked the mental capacity to control his or her conduct;

      (4) *insured* was not charged with or convicted of a criminal act or omission; or

      (5) *insured* was impaired by drugs or alcohol;

   b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits;

   c. *bodily injury* or *property damage* arising out of the rental of any part of any premises by any *insured*. This exclusion does not apply:

      (1) to the rental of the *residence premises*:

         (a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

         (b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

         (c) in part, as an office, school, studio, or private garage;

      (2) when the *dwelling* on the *residence premises* is a two, three, or four family *dwelling* and *you* occupy one part and rent the other part to others;

      (3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

      (4) to activities that are ordinarily incident to non-*business* pursuits;

   d. *bodily injury* or *property damage* arising out of the rendering or failing to render professional services;

   e. *bodily injury* or *property damage* arising out of any premises currently owned or rented to any *insured* which is not an *insured location*. This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*;

   f. *bodily injury* or *property damage* arising out of the ownership, maintenance, use, loading, or unloading of:

      (1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

         (a) solely for recreational or hobby purposes;

         (b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

25

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) *property damage* to any aircraft; or

(b) *bodily injury* or *property damage* resulting from interference with an aircraft carrying people regardless of whether the *bodily injury* or *property damage* is sustained by people or property on the aircraft or not;

(2) a *motor vehicle* owned or operated by or rented or loaned to any *insured*; or

(3) a watercraft:

(a) owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any *insured* if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any *insured*;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any *insured* if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*. Exclusion f.(3) does not apply while the watercraft is on the *residence premises*;

g. *bodily injury* or *property damage* arising out of:

(1) the entrustment by any *insured* to any person;

(2) the supervision by any *insured* of any person;

(3) any liability statutorily imposed on any *insured*; or

(4) any liability assumed through an unwritten or written agreement by any *insured*;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or *motor vehicle* not covered under Section II of this policy;

h. *bodily injury* or *property damage* caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. *bodily injury* to any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*.

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*;

j. any claim made or suit brought against any *insured* by:

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

      (b)  any employee of any *insured*; or

      (c)  any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k.  *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l.  *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to:

    (1)  the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional; or

    (2)  an *insured* who did not knowingly participate or cooperate in the acts described in paragraph l. above;

m.  *bodily injury* or *property damage* arising out of any actual, alleged, or threatened:

    (1)  sexual harassment, sexual molestation, or sexual misconduct;

    (2)  physical or mental abuse; or

    (3)  corporal punishment;

by the *insured*;

n.  *bodily injury* or *property damage* arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

*We* also do not cover any loss, cost, or expense arising out of any:

    (1)  request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

    (2)  claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*; or

o.  *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

2.  Coverage L does not apply to:

a.  liability:

    (1)  for *your* share of any loss assessment charged against all members of any type of association of property owners; or

    (2)  imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the *insured* would have in absence of the contract or agreement;

b.  *property damage* to property owned by any *insured* at the time of the *occurrence*;

c.  *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d.  *bodily injury* to a person eligible to receive any benefits required to be provided or voluntarily provided by an *insured* under a workers'

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

compensation, non-occupational disability, or occupational disease law;

e.   *bodily injury* or *property damage* for which an *insured* under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f.   *bodily injury* or *property damage* arising out of any real property any *insured* has sold or transferred.  This includes but is not limited to *bodily injury* or *property damage* arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any *property damage* to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1)   *bodily injury* arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2)   *property damage* arising out of fire, smoke, or explosion.

3.   Coverage M does not apply to *bodily injury*:

a.   to a *residence employee* if it occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured*;

b.   to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c.   to a person other than a *residence employee* of an *insured*, regularly residing on any part of the *insured location*; or

d.   from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1.   **Limit of Liability.**  The Coverage L limit is shown in the *Declarations*.  This is the limit for all damages from each *occurrence* for the policy period in which the *bodily injury* or *property damage* first occurs, regardless of the number of *insureds*, claims made, or persons injured.  No additional limits or coverage will be available for the *occurrence* under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the *Declarations*. This is *our* limit for all medical expenses for *bodily injury* to one person as the result of one accident.

2.   **Severability of Insurance.**  This insurance applies separately to each *insured*. This condition does not increase *our* limit of liability for any one *occurrence*.

3.   **Duties After Loss.**  In case of an accident or *occurrence*, the *insured* must cooperate with *us* in the investigation, settlement, or defense of any claim or suit and also perform the following duties

that apply.  *You* must cooperate with *us* in seeing that these duties are performed:

a.   give written notice to *us* or *our* agent as soon as possible, which sets forth:

(1)   the identity of this policy and the *insured*;

(2)   reasonably available information on the time, place, and circumstances of the accident or *occurrence*; and

(3).   names and addresses of any claimants and available witnesses;

b.   immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c.   at *our* request, assist in:

(1)   making settlement;

28
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

    (2)  the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *insured*;

    (3)  the conduct of suits and attend hearings and trials; and

    (4)  securing and giving evidence and obtaining the attendance of witnesses;

d.  under **SECTION II – ADDITIONAL COVER-AGES, Damage to Property of Others**, exhibit the damaged property if within the *insured's* control; and

e.  the *insured* must not, except at the *insured's* own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the *bodily injury*.

4.  **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

a.  written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

b.  the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

c.  any authorizations from the injured person as *we* may require.

5.  **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *insured* or *us*.

6.  **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with respect to Coverage L will be brought against *us* until the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7.  **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *insured* will not relieve *us* of *our* obligation under this policy.

8.  **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II – CONDITIONS

1.  **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2.  **Concealment or Fraud.**

a.  This policy is void as to *you* and any other *insured* if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

However, this condition applies only to facts or circumstances:

    (1)  on which *we* rely and are either:

        (a)  material; or

        (b)  made with intent to deceive; or

    (2)  that contribute to the loss.

b.  No failure of a policy condition before the loss and no breach of a promissory warranty affects *our* obligations under this policy unless such failure or breach exists at the time of loss and either:

    (1)  increases the risk at the time of loss; or

    (2)  contributes to the loss.

Item 2.b. does not apply to failure to tender payment of premium.

c.  Violation of this condition by an *insured* does not apply to a claim of an innocent *insured*, to

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

the extent of the innocent *insured's* interest in the covered property, if the loss:

    (1)  arises out of family violence against an innocent *insured*; and

    (2)  is caused by an intentional act of an *insured* against whom a family violence complaint is brought.

3.  **Liberalization Clause.**  If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4.  **Waiver or Change of Policy Provisions.**  A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

5.  **Cancellation.**

  a.  *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. If only *your* interest is affected, the effective date of cancellation will be the later of:

    (1)  the date *we* receive *your* notice of cancellation; or

    (2)  the date specified in the notice.

    However, upon receipt of *your* notice of cancellation, *we* may waive the requirement that the notice be in writing by confirming the date and time of cancellation to *you* in writing.

  b.  *We* may cancel this policy only for the reasons stated in this condition. *We* will notify *you* in writing of the date cancellation takes effect. This cancellation notice may be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. Proof of mailing will be sufficient proof of notice:

    (1)  When *you* have not paid the premium, *we* may cancel at any time by notifying *you* at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or

*our* agent or under any finance or credit plan.

    (2)  When this policy has been in effect for less than 60 days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

    (3)  When this policy has been in effect for 60 days or more, or at any time if it is a renewal with *us*, *we* may cancel:

      (a)  if there has been a material misrepresentation of fact that, if known to *us*, would have caused *us* not to issue this policy; or

      (b)  if the risk has changed substantially since this policy was issued.

    *We* may cancel this policy by notifying *you* at least 30 days before the date cancellation takes effect.

    (4)  When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

  c.  When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium will be pro rata.

  d.  The return premium may not be refunded with the notice of cancellation or when this policy is returned to *us*. In such cases, *we* will refund it within a reasonable time after the date cancellation takes effect.

  e.  If *we* cancel this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

6.  **Nonrenewal.** *We* may elect not to renew this policy. If *we* elect not to renew, a written notice will be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

If *we* elect not to renew this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

a. **Subrogation.**

(1) Applicable to SECTION I:

If *any insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

(2) Applicable to SECTION II:

If *any insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others.**

b. **Reimbursement.**

If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payment.

9. **Death.** If *you* die:

a. *we* insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. *insured* includes:

(1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the *residence premises*; and

(2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

a. Unless as otherwise provided by an alternative payment plan in effect with the **State Farm Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued *Declarations.*

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the **State Farm Companies;**

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies.** The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

of which *you* are a member, employee, subscriber, licensee, or franchisee.

d. *Your* purchase of this policy may allow:

    (1) *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

    (2) the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

**12. Right to Inspect.**

a. *We* have the right but are not obligated to perform the following:

    (1) make inspections and surveys of the *insured location* at any time;

    (2) provide *you* with reports on conditions *we* find; or

    (3) recommend changes.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

b. *We* do not:

    (1) make safety inspections;

    (2) undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

    (3) warrant that conditions are safe or healthful; or

    (4) warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies to *us* and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on *our* behalf.

**13. Joint and Individual Interests.** When there are two or more Named Insureds, each acts for all to cancel or change this policy.

**14. Change of Policy Address.** *We* may change the Named Insured's policy address as shown in the *Declarations* and in *our* records to the most recent address provided to *us* by:

a. *you*; or

b. the United States Postal Service.

**15. Electronic Delivery.** With *your* consent, *we* may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

**16. Our Rights Regarding Claim Information.**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to 16.a. above, we will not be restricted in or prohibited from:

    (1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

    (2) using any of the items described in item b.(1) above; or

    (3) retaining:

        (a) any of the items in item b.(1) above; or

        (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

c. **We** may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of **our** business functions;

(2) to meet **our** reporting obligations to insurance regulators;

(3) to meet **our** reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. **Our** rights under 16.a., 16.b., and 16.c. above will not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

17. **Duties Regarding Claim Information.** An **insured** or a legal representative acting on an **insured's** behalf must provide **us** with any requested authorizations related to the claim. **Our** rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with **us**. Coverage is with respect to:

1. **SECTION I – Coverage A, Coverage B, or Coverage C;** or

2. **SECTION II – Coverage L and Coverage M** but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP – Business Property.** The COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU – Business Pursuits. SECTION II – EXCLUSIONS,** item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

a. clerical office employee, salesperson, collector, messenger; or

b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

(1) computer programming, architectural, engineering, or industrial design services;

(2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

c.   for **bodily injury** to a fellow employee of the **Insured** injured in the course of employment; or

d.   when the **insured** is a member of the faculty or teaching staff of a school or college:

(1)   for **bodily injury** or **property damage** arising out of the maintenance, use, loading, or unloading of:

(a)   draft or saddle animals, including vehicles for use with them; or

(b)   aircraft, **motor vehicles**, recreational **motor vehicles** or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned, operated, or hired by or for the **insured** or employer of the **Insured** or used by the **insured** for the purpose of instruction in the use thereof; or

(2)   under **Coverage M** for **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1.   **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a.   mechanical breakdown, wear and tear, or gradual deterioration;

b.   all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

c.   any process of refinishing, renovating, or repairing;

d.   dampness of atmosphere or extremes of temperatures;

e.   inherent defect or faulty manufacture;

f.   rust, fouling, or explosion of firearms;

g.   breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

h.   infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2.   **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3.   **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4.   **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option ID – Increased Dwelling Limit. We** will settle losses to damaged **building structures** covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the **Declarations**.

If the amount **you** actually and necessarily spend to repair or replace damaged **building structures** exceeds the applicable limit of liability shown in the **Declarations**, **we** will pay the additional amounts not to exceed:

1.   the Option ID limit of liability shown in the **Declarations** to repair or replace the **dwelling**; or

2.   10% of the Option ID limit of liability to repair or replace **building structures** covered under **COVERAGE A – DWELLING, Other Structures.**

**Report Increased Values. You** must notify **us** within 90 days of the start of construction on any new **building structure** costing $5,000 or more; any additions to or remodeling of **building structures** that increase their values by $5,000 or more. **You** must pay any additional premium due for the increased value. **We** will not pay more than the applicable limit of liability shown in the **Declarations** if **you** fail to notify **us** of the increased value within 90 days.

34

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental *business* occupancy on file with *us*.

1. **COVERAGE A – DWELLING, Other Structures,** item 2.b. is deleted.

2. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this *business* occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the *Declarations*. The first limit applies to property on the *residence premises*. The second limit applies to property while off the *residence premises*. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a *business*.

3. Under Section II, the *residence premises* is not considered *business* property because an *insured* occupies a part of it as an incidental *business*.

4. **SECTION II – EXCLUSIONS,** item 1.b. is replaced with the following:

   b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits or to *business* pursuits of an *insured* that are necessary or incidental to the use of the *residence premises* as an incidental *business*;

5. This insurance does not apply to:

   a. *bodily injury* to an employee of an *insured* arising out of the *residence premises* as an incidental *business* other than to a *residence employee* while engaged in the employee's employment by an *insured*;

   b. *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*;

c. liability arising out of any acts, errors, or omissions of an *insured*, or any other person for whose acts an *insured* is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an *insured's* incidental *business* involving data processing, computer consulting, or computer programming; or

d. any claim made or suit brought against any *insured* by:

   (1) any person in the care of any *insured* because of child care services provided by or at the direction of:

      (a) any *insured*;

      (b) any employee of any *insured*; or

      (c) any other person actually or apparently acting on behalf of any *insured*; or

   (2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

      (a) any *insured*;

      (b) any employee of any *insured*; or

      (c) any other person actually or apparently acting on behalf of any *insured*.

   Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

   This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES**

35

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

**INSURED, COVERAGE B – PERSONAL PROPERTY, Theft** apply to Option JF.

The following additional provisions apply:

1. **We** will not pay for any loss for the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.** The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy. This is an additional amount of insurance and applies to **building structures** on the **residence premises**.

2. **Damaged Portions of Building Structure.** When a **building structure** covered under **COVERAGE A – DWELLING** is damaged by a **loss insured**, **we** will pay for the increased cost to repair or rebuild the physically damaged portion of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same **loss insured** and the

requirement is in effect at the time the **loss insured** occurs.

3. **Undamaged Portions of Damaged Building Structure.** When a **building structure** covered under **COVERAGE A – DWELLING** is damaged by a **loss insured**, **we** will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same **loss insured** and the requirement is in effect at the time the **loss insured** occurs; and

   b. loss to the undamaged portion of the **building structure** caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same **loss insured**;

      (2) the enforcement requires the demolition of portions of the same **building structure** not damaged by the same **loss insured**;

      (3) the ordinance or law regulates the construction or repair of the **building structure**, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same **loss insured**; or

   c. legally required changes to the undamaged portion of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law, if:

      (1) the enforcement is directly caused by the same **loss insured**;

      (2) the requirement is in effect at the time the **loss insured** occurs; and

      (3) the legally required changes are made to the undamaged portions of specific **building structure** features, systems, or components that have been physically damaged by the **loss insured**.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

*We* will not pay for legally required changes to specific *building structure* features, systems, or components that have not been physically damaged by the *loss insured*.

4. **Building Ordinance or Law Coverage Limitations.**

a. *We* will not pay for any increased cost of construction:

(1) until the *building structure* is actually repaired or replaced at the same or another premises in the same general vicinity;

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

(3) due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

b. *We* will not pay more under this coverage than the amount *you* actually spend:

(1) for the increased cost to repair or rebuild the *building structure* at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

*We* will not pay for more than a *building structure* of the same height, floor area, and style on the same or similar premises as the *building structure*, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability,** item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017



# Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Fire and Casualty Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 11-BZ-U116-1 including any endorsements, if applicable, for the policy term(s) 03/07/2019 - 03/07/2020 and insuring BONE, MONTE D based on available records.

The policy was in effect on the loss date of 04/19/2019.

Shaun Mendez
Underwriter
Date: 09/19/2019

2000 143551 200 03-21-2012

# EXHIBIT B



State Farm Insurance Companies

July 03, 2019

WOLF & ASSOCIATES PUBLIC ADJUSTING
2088D HIGHWAY 36 E
JACKSON, GA, 30233-3505

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA 30348-6169
Fax 844 236 3646

RE:  Claim Number:        11-01X7-29Z
     Policy Number:       11-BZ-U116-1
     Insured:             Monte D Bone
     Location of
       Insured Property:  15 Heritage Way,  McDonough, GA 30253-6065
     Type of Policy:      Homeowners HW-2111
     Date of Loss:        April 19, 2019

Dear Richie Brown:

Thank you for meeting with me on 06/03/2019, when we discussed the damage to the residence
of our insured, Monte D Bone.

Based upon the results of our discussions, site inspection, investigation, and review of the
information your office provided from Palmer Construction Consultants, Inc., it was determined
the damages incurred at 15 Heritage Way, McDonough, GA are not covered.  Our inspection of
the front porch/deck revealed no evidence of accidental direct physical loss.  Rather, the
porch/deck had a repeated exposure which caused the deterioration and rot.

Based on our additional review, our initial decision and letter of denial dated April 26, 2019
remains unchanged.

Please refer to the following policy provisions:

### SECTION I – LOSSES INSURED

## COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the
loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or
limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in
value*.

### SECTION I – LOSSES NOT INSURED

WOLF & ASSOCIATES PUBLIC ADJUSTING
Page 2
June 20, 2019

1. *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

   g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

   h. corrosion, electrolysis, or rust;

   i. wet or dry rot;

   k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

   However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events.  *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from any natural or external forces, or occurs as a result of any combination of these:

   a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure.

   b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth.  Earth movement includes but is not limited to:

      (1) earthquake;

      (2) landslide, mudslide, or mudflow;

      (3) sinkhole or subsidence;

      (4) movement resulting from:

         (a) improper compaction;

         (b) site selection;

         (c) natural resource extraction activities; or

         (d) excavation;

      (5) erosion;

      (6) pressure by surface or subsurface earth or fill; or

      (7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

WOLF & ASSOCIATES PUBLIC ADJUSTING
Page 3
June 20, 2019

However, *we* will pay for any accidental direct physical loss by fire, explosion other than explosion of a volcano, or theft resulting from earth movement, provided the resulting loss is itself a *loss insured.*

d. **Neglect**, meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below.   Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

b. defect, weakness, inadequacy, fault, or unsoundness in:

(1) planning, zoning, development, surveying, or siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

Additionally, we provide the following pertinent policy information:

## SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

11. **Collapse.**  *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*.  Collapse does not include any of the following:

(1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

(2) substantial structural impairment;

(3) imminent or threatened collapse;

(4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

(5) a part of a *building structure* that is standing even if:

WOLF & ASSOCIATES PUBLIC ADJUSTING
Page 4
June 20, 2019

   (a) it has separated from another part of the *building structure*; or

   (b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

  b. The collapse must be directly and immediately caused by one or more of the following:

   (1) perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**  These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

   (2) decay or deterioration of, or damage from animals, birds, or insects to:

    (a) a connector; or

    (b) a structural member of a *building structure*;

    The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

   (3) weight of contents, equipment, animals, or people;

   (4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

   (5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

  Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

## SECTION I – CONDITIONS

6. **Suit Against Us.**  No action will be brought against *us* unless there has been full compliance with all of the policy provisions.  Any action by any party must be started within one year after the date of loss or damage.

  However, if the action results from a loss caused by fire or lightning, the action must be started within two years after the date of loss or damage.

This denial involves the coverages of this policy only.

This Company does not intend, by this letter, to waive any policy defenses in addition to those stated above, and reserves its right to assert such additional policy defenses at any time.

If you have any additional information regarding Monte D Bone's claim which has not been previously considered, or if you desire any additional explanation regarding this matter, please contact our Weather and Catastrophe Claim services office at 844-458-4300.  Claim specialists are available to assist you Monday through Saturday, 7 am to 7 pm.

Sincerely,

WOLF & ASSOCIATES PUBLIC ADJUSTING
Page 5
June 20, 2019


Larry J Watts
External Claim Resource
(866) 787-8676 Ext. 10890
Fax: (877) 732-6556

State Farm Fire and Casualty Company

cc:     BILL THOMPSON
        125 GLYNN ST N
        FAYETTEVILLE, GA 30214

# EXHIBIT C



**Michael D. Turner, Esq.**
110 Norcross Street
Roswell, GA 30075
mdturner@lawhuggins.com
(770) 913-6229

September 13, 2019

Larry J. Watts
State Farm Fire and Casualty Company
P.O. Box 106169
Atlanta, GA 30348-6169

**Sent Via email:**
**statefarmfireclaims@statefarm.com**

Re:    Property Owners:  Mr. and Mrs. Monte Bone
       Policy Number:  11-BZ-U116-1
       Claim Number:  11-01X7-29Z
       Date of Loss:  4/19/19

Dear Mr. Watts:

I have been retained by Mr. and Mrs. Monte Bone ("the Bones") to represent them regarding the above referenced property insurance claim.  All further communication regarding this claim should be directed to my office.

Please also accept this letter as a formal demand for a **certified copy of the relevant insurance policy, to include the original policy, any renewals, endorsements, and any estimates.**

My clients have complied with all conditions contained in the insurance policy.  My clients are at a loss as to why State Farm Fire and Casualty Company ("State Farm") has not afforded the proper coverage under the applicable policy.  This lack of good faith has forced the Bones to retain my legal services in order to fairly settle their claim. It is our belief that State Farm has violated the Unfair Claims Settlement Practice Act pursuant to O.C.G.A. § 33-6-34, and has breached the insurance policy.

Bad faith claims handling triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, as per the enclosed spreadsheet of damages to The Bones' property we are hereby making formal demand that you settle the above claim for the sum of **$52,566.09.** An estimate of damages is attached for your review.  This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a law suit containing a claim for breach of contract and bad faith seeking all compensation allowed

To:  State Farm Fire and Casualty Company
Client: Mr. and Mrs. Monte Bone
September 13, 2019
Page **2** of **2**

by law, including attorneys' fees and penalty of fifty percent (50%) of the loss amount.  Attached please also find a report by David Palmer, P.E. of Palmer Construction Consultants, Inc., in which he concludes the damage to my clients' home was completely hidden from view; the damage was the result of a sudden, unexpected, and accidental event; and said event caused significant damage to my clients' home.

        This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6.  If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation.  Otherwise, it will be assumed that you agree that a proper demand was made.

        The purpose of this correspondence is to encourage State Farm to resolve the Bones' claim in a fair and equitable manner to avoid litigation.  In the event that you fail to respond to this letter with an offer of settlement that is acceptable to the Bones, we will have no alternative but to recommend to the Bones that a lawsuit be filed against you.

        In order to avoid a suit for bad faith penalties and attorney's fees, payment must be received in my office within sixty (60) days of your receipt of this letter.  Any check issued should list Huggins Law Firm, LLC.

        I look forward to working with you to resolve this matter quickly and amicably.  Please feel free to contact me should you have any questions in regards to this formal 60-day demand.

                                        Sincerely,

                                        Michael D. Turner, Esq.
                                        Attorney at Law

MDT
Enclosures



### Wolf & Associates

Wolf & Associates, LLC.
2088 D Hwy 36 E
Jackson, Ga 30233
844-548-9653
EIN-83-2435525

| | |
|---|---|
| Insured: | Monte Bone |
| Property: | 15 Heritage way |
| | Mcdonough, GA 30253 |

| | | | |
|---|---|---|---|
| Claim Rep.: | Richie Brown | Business: | (864) 884-1848 |
| Position: | Public Adjuster | E-mail: | isolveproblemclaims@gmail.com |
| Company: | Wolf & Associates Public Adjusters | | |
| Business: | 2088 Hwy 36 E | | |
| | Jackson, GA 30233 | | |

| | | | |
|---|---|---|---|
| Estimator: | Richie Brown | Business: | (864) 884-1848 |
| Position: | Public Adjuster | E-mail: | isolveproblemclaims@gmail. |
| Company: | Wolf & Associates Public Adjusters | | com |
| Business: | 2088 Hwy 36 E | | |
| | Jackson, GA 30233 | | |

**Claim Number:** 11-01X7-29Z       **Policy Number:** 11BZ-U116-1       **Type of Loss:** Collapse

| | | | |
|---|---|---|---|
| Date Contacted: | 7/30/2019 | | |
| Date of Loss: | 4/19/2019 | Date Received: | 4/30/2019 |
| Date Inspected: | 4/30/2019 | Date Entered: | 7/30/2019 8:09 AM |
| Date Est. Completed: | 9/3/2019 8:28 AM | | |

| | |
|---|---|
| Price List: | GAAT8X_JUL19 |
| | Restoration/Service/Remodel |
| Estimate: | BONE |



## Wolf & Associates

Wolf & Associates, LLC.
2088 D Hwy 36 E
Jackson, Ga 30233
844-548-9653
EIN-83-2435525

The Insured, has provided us, Wolf & Associates a licensed Public Adjuster in this state, a copy of the Estimate prepared by the Carrier. After careful review, a few items were identified that were not included in
the original estimate. The appropriate additional items are related to the original cause of loss. Subsequently, a new estimate is attached for your consideration.
By submitting this estimate, Wolf & Associates will serve as a Public Adjuster to the Home Owner to obtain items required to restore the
property per all current building and manufactures code.
The Insured has notified Wolf & Associates that they intend to claim the Replacement Cost value of the damages by completing all
of the necessary repairs. The Insured's decision to hire a Public Adjuster was to aid in the scope of loss. This state requires all contractors to be licensed. A General contractor is needed
understandably for the following reasons:
1. To oversee and manage the complexities of construction.
2. To interview and hire qualified roofers and/or other subcontractors.
3. To properly manage subcontractors and ensure that quality repairs are done according to all applicable building codes.
4. The Insured does not personally have the knowledge, nor the time, to do the above mentioned activities that are required as part of the repair process.
Wolf & Associates standardly uses the primary insurance industry database (Xactimate) for preparation of property loss related repair estimates. For additional information regarding Xactimate's intended use of "Overhead", "Profit" and "Supervisor Hours", please reference their white paper entitled, "Overhead and Profit". In short, it explains that general overhead and profit is for indirect job costs and that supervisor hours are for direct job costs.
For any questions related to the attached estimate, please contact us directly via phone at 864-884-1848 or e-mail at isloveproblemclaims@gmail.com



## Wolf & Associates

Wolf & Associates, LLC.
2088 D Hwy 36 E
Jackson, Ga 30233
844-548-9653
EIN-83-2435525

**BONE**

**BONE**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 1. Residential Supervision / Project Management - per hour | 80.00 HR | @ | 56.50 | = | 4,520.00 |
| 2. Temporary toilet (per month) | 1.00 MO | @ | 106.15 | = | 106.15 |
| 3. Dumpster load - Approx. 40 yards, 7-8 tons of debris | 1.00 EA | @ | 697.28 | = | 697.28 |
| 4. Temporary Repairs (Bid Item) | 1.00 EA | @ | 2,300.00 | = | 2,300.00 |

To prevent the carrier from dropping her, she had to have a temporary deck in place to satisfy underwriting.

### Front Elevation

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 5. General Demolition - per hour | 16.00 HR | @ | 41.97 | = | 671.52 |
| 6. R&R Wood door frame & trim - exterior - hardwood | 525.00 LF | @ | 17.69 | = | 9,287.25 |
| 7. Exterior light fixture - Detach & reset | 5.00 EA | @ | 65.82 | = | 329.10 |
| 8. R&R Stud wall - 2x6 (per BF) | 18.00 BF | @ | 2.59 | = | 46.62 |
| 9. R&R Joist - floor or ceiling - 2x10 - w/blocking | 48.00 LF | @ | 4.40 | = | 211.20 |
| 10. Gutter / downspout - Detach & reset | 35.00 LF | @ | 3.34 | = | 116.90 |
| 11. Tear out trim | 80.00 LF | @ | 0.38 | = | 30.40 |
| 12. R&R Deck hand rail/guard rail - Labor only | 20.00 LF | @ | 22.68 | = | 453.60 |
| 13. R&R Custom bent aluminum (PER LF) | 257.00 LF | @ | 16.86 | = | 4,333.02 |
| 14. Caulking - acrylic | 864.00 LF | @ | 2.08 | = | 1,797.12 |
| 15. Seal & paint wood siding | 1,200.00 SF | @ | 1.21 | = | 1,452.00 |
| 16. Paint door/window trim & jamb - 2 coats (per side) | 6.00 EA | @ | 27.55 | = | 165.30 |
| 17. Prime & paint gutter / downspout | 64.00 LF | @ | 1.48 | = | 94.72 |
| 18. Wood window unit - Detach & reset | 2.00 EA | @ | 109.94 | = | 219.88 |
| 19. R&R Exterior door slab - insulated metal or wood - High grade | 1.00 EA | @ | 388.65 | = | 388.65 |
| 20. R&R House wrap (air/moisture barrier) | 1,200.00 SF | @ | 0.33 | = | 396.00 |

Per current building codes the house must have a vapor barrier.

| | | | | | |
|---|---|---|---|---|---|
| 21. Two ladders with jacks and plank (per day) | 2.00 DA | @ | 110.00 | = | 220.00 |
| 22. Stain & finish wood siding | 1,200.00 SF | @ | 1.42 | = | 1,704.00 |
| 23. R&R Siding - plywood panel - stain grade | 1,200.00 SF | @ | 3.28 | = | 3,936.00 |
| 24. Door lockset & deadbolt - exterior - Detach & reset | 1.00 EA | @ | 25.12 | = | 25.12 |

### Left Elevation

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 25. Gutter / downspout - Detach & reset | 20.00 LF | @ | 3.34 | = | 66.80 |
| 26. Prime & paint gutter / downspout | 54.00 LF | @ | 1.48 | = | 79.92 |
| 27. R&R Trim board - 1" x 4" - installed (pine) | 120.00 LF | @ | 3.30 | = | 396.00 |



**Wolf & Associates**

Wolf & Associates, LLC.
2088 D Hwy 36 E
Jackson, Ga 30233
844-548-9653
EIN-83-2435525

**CONTINUED – Left Elevation**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 28. R&R House wrap (air/moisture barrier) | 448.00 | SF @ | 0.33 | = | 147.84 |
| 29. Paint exterior soffit - wood - 1 coat | 54.00 | SF @ | 1.27 | = | 68.58 |
| 30. Exterior light fixture - Detach & reset | 2.00 | EA @ | 65.82 | = | 131.64 |
| 31. R&R Siding - plywood panel - stain grade | 448.00 | SF @ | 3.28 | = | 1,469.44 |
| 32. Stain & finish wood siding | 448.00 | SF @ | 1.42 | = | 636.16 |

**Right Elevation**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 33. Gutter / downspout - Detach & reset | 20.00 | LF @ | 3.34 | = | 66.80 |
| 34. Meter base and main disconnect - Detach & reset | 1.00 | EA @ | 270.97 | = | 270.97 |
| 35. Detach & Reset Meter base and main disconnect - 100 - 125 amp | 1.00 | EA @ | 270.97 | = | 270.97 |
| 36. R&R House wrap (air/moisture barrier) | 192.00 | SF @ | 0.33 | = | 63.36 |
| 37. Two ladders with jacks and plank (per day) | 1.00 | DA @ | 110.00 | = | 110.00 |
| 38. Prime & paint gutter / downspout | 24.00 | LF @ | 1.48 | = | 35.52 |
| 39. Paint exterior soffit - wood - 1 coat | 24.00 | SF @ | 1.27 | = | 30.48 |
| 40. Exterior light fixture - Detach & reset | 1.00 | EA @ | 65.82 | = | 65.82 |
| 41. R&R Siding - plywood panel - stain grade | 192.00 | SF @ | 3.28 | = | 629.76 |
| 42. Stain & finish wood siding | 192.00 | SF @ | 1.42 | = | 272.64 |

**Rear Elevation**

| DESCRIPTION | QTY | | UNIT PRICE | | TOTAL |
|---|---|---|---|---|---|
| 43. Exterior light fixture - Detach & reset | 3.00 | EA @ | 65.82 | = | 197.46 |
| 44. R&R Trim board - 1" x 4" - installed (pine) | 52.00 | LF @ | 3.30 | = | 171.60 |
| 45. Gutter / downspout - Detach & reset | 10.00 | LF @ | 3.34 | = | 33.40 |
| 46. Prime & paint gutter / downspout | 71.00 | LF @ | 1.48 | = | 105.08 |
| 47. Paint exterior soffit - wood - 1 coat | 130.00 | SF @ | 1.27 | = | 165.10 |
| 48. R&R Trim board - 1" x 2" - installed (pine) | 70.00 | LF @ | 2.60 | = | 182.00 |
| 49. R&R Siding - plywood panel - stain grade | 320.00 | SF @ | 3.28 | = | 1,049.60 |
| 50. Stain & finish wood siding | 320.00 | SF @ | 1.42 | = | 454.40 |



**Wolf & Associates**

Wolf & Associates, LLC.
2088 D Hwy 36 E
Jackson, Ga 30233
844-548-9653
EIN-83-2435525

**CONTINUED - Rear Elevation**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 51.  Paint trim - one coat | 115.00  LF @ | 0.85 = | 97.75 |

**Interior**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 52.  Dust control barrier per square foot | 30.00  SF @ | 0.54 = | 16.20 |
| To protect from dust escaping through the house. | | | |
| 53.  Dust control barrier - tension post - per day | 12.00  DA @ | 3.30 = | 39.60 |
| 54.  Ceramic Tile Flooring - General Laborer - per hour | 4.00  HR @ | 36.00 = | 144.00 |
| 55.  R&R Ceramic tile - Standard grade | 120.00  SF @ | 11.15 = | 1,338.00 |
| Due to hidden damage the plywood is compromised under the concrete floor. | | | |
| 56.  R&R Base shoe - hardwood | 10.00  LF @ | 1.91 = | 19.10 |
| 57.  R&R Baseboard - 3 1/4" hardwood | 10.00  LF @ | 4.49 = | 44.90 |
| 58.  Stain & finish trim | 10.00  LF @ | 1.39 = | 13.90 |
| 59.  Paint the surface area - one coat | 80.00  SF @ | 0.58 = | 46.40 |
| 60.  R&R Window trim set (casing & stop) - hardwood | 24.00  LF @ | 5.38 = | 129.12 |

**Labor Minimums Applied**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 61.  Water extract/remediation labor minimum | 1.00  EA @ | 83.35 = | 83.35 |
| 62.  Finish hardware labor minimum | 1.00  EA @ | 97.53 = | 97.53 |
| 63.  Tile floor covering labor minimum | 1.00  EA @ | 111.25 = | 111.25 |



**Wolf & Associates**

Wolf & Associates, LLC.
2088 D Hwy 36 E
Jackson, Ga 30233
844-548-9653
EIN-83-2435525

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 42,854.27 |
| Material Sales Tax | 950.74 |
| | |
| Subtotal | 43,805.01 |
| Overhead | 4,380.54 |
| Profit | 4,380.54 |
| | |
| **Replacement Cost Value** | **$52,566.09** |
| **Net Claim** | **$52,566.09** |

Richie Brown
Public Adjuster



**Wolf & Associates**

Wolf & Associates, LLC.
2088 D Hwy 36 E
Jackson, Ga 30233
844-548-9653
EIN-83-2435525

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (7%) | Storage Rental Tax (7%) | Local Food Tax (3%) |
|---|---|---|---|---|---|
| Line Items | 4,380.54 | 4,380.54 | 950.74 | 0.00 | 0.00 |
| **Total** | **4,380.54** | **4,380.54** | **950.74** | **0.00** | **0.00** |



**Wolf & Associates**

Wolf & Associates, LLC.
2088 D Hwy 36 E
Jackson, Ga 30233
844-548-9653
EIN-83-2435525

## Recap by Room

| Estimate: BONE | | |
|---|---:|---:|
| | 7,623.43 | 17.79% |
| **Front Elevation** | 25,878.40 | 60.39% |
| **Left Elevation** | 2,996.38 | 6.99% |
| **Right Elevation** | 1,816.32 | 4.24% |
| **Rear Elevation** | 2,456.39 | 5.73% |
| **Interior** | 1,791.22 | 4.18% |
| **Labor Minimums Applied** | 292.13 | 0.68% |
| **Subtotal of Areas** | 42,854.27 | 100.00% |
| **Total** | 42,854.27 | 100.00% |



**Wolf & Associates**

Wolf & Associates, LLC.
2088 D Hwy 36 E
Jackson, Ga 30233
844-548-9653
EIN-83-2435525

## Recap by Category

| O&P Items | Total | % |
|---|---:|---:|
| GENERAL DEMOLITION | 3,500.69 | 6.66% |
| DOORS | 9,120.91 | 17.35% |
| ELECTRICAL | 541.94 | 1.03% |
| FLOOR COVERING - CERAMIC TILE | 255.25 | 0.49% |
| FINISH CARPENTRY / TRIMWORK | 848.56 | 1.61% |
| FINISH HARDWARE | 122.65 | 0.23% |
| FRAMING & ROUGH CARPENTRY | 646.18 | 1.23% |
| LABOR ONLY | 4,520.00 | 8.60% |
| LIGHT FIXTURES | 724.02 | 1.38% |
| MOISTURE PROTECTION | 1,797.12 | 3.42% |
| PAINTING | 5,421.95 | 10.31% |
| SCAFFOLDING | 330.00 | 0.63% |
| SIDING | 10,874.92 | 20.69% |
| SOFFIT, FASCIA, & GUTTER | 283.90 | 0.54% |
| TILE | 1,156.80 | 2.20% |
| TEMPORARY REPAIRS | 2,406.15 | 4.58% |
| WINDOWS - WOOD | 219.88 | 0.42% |
| WATER EXTRACTION & REMEDIATION | 83.35 | 0.16% |
| **O&P Items Subtotal** | 42,854.27 | 81.52% |
| Material Sales Tax | 950.74 | 1.81% |
| Overhead | 4,380.54 | 8.33% |
| Profit | 4,380.54 | 8.33% |
| **Total** | 52,566.09 | 100.00% |



2755 Antioch Road, Suite 200, Box4
Cumming, Georgia 30040

Office: (770) 886-5033
Fax: (770) 886-8084

Wolf & Associates
Attn: Mr. Richie Brown
isolveproblemclaims@gmail.com

May 16, 2019

Re: Structural Evaluation at 15 Heritage Way, McDonough, GA

Dear Mr. Brown:

Following your request, David Palmer, PE visited the above site to evaluate the failure and collapse of the front porch deck. The deck was framed with dimensional lumber and attached to the home and garage rim boards. The floor was decked with 2x6 members, and we noted that the decking was pushed tightly together and any gaps between the decking had filled in over time with debris.

At the time of our visit, the framing had completely collapsed at the left and partially separated at the right side. We noted deterioration in the house and garage rim, and this deterioration was completely hidden from view by the existing porch framing.

We believe that the deterioration and ultimate collapse of the deck was caused by water ponding on the surface of the deck. The lack of space between the 2x6 decking allowed water to pond after rain events, and this water eventually saturated and rotted the home's rim beam in this area. It is likely that the weight of the water on the deck combined with the deterioration caused a sudden and complete collapse of the structure as witnessed. Testimony given by the homeowner states that the collapse happened immediately following a rain event.

Based upon our onsite observations, we believe that the damage to the structure supporting the deck was completely hidden from view. We also believe that the collapse was a sudden and unexpected event caused by the weight of water ponded on the decking.

In order to repair the framing, it will be necessary to completely remove and replace the front deck. The rotted sill beams at the home and garage must be removed and replaced with pressure treated members so that the new deck framing may be properly reattached. When installing the new decking, ensure adequate air gaps are left between decking boards, and grade the soil beneath the deck to promote drainage away from the home.

We hope this report provides you with the necessary insight into the concerns noted. Should you have any questions regarding this report, or if we can be of further assistance, please call us at your convenience.

Sincerely,

David Palmer, P.E.
Georgia P.E. No. 38778

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **MONTE D. BONE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE NO.:** |
| **v.** | ) | <u>**20-C-01990-S2**</u> |
| | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY,** | ) | |
| a foreign corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT</u>

Comes Now Plaintiff, Monte D. Bone, and hereby propounds the following First Set of Interrogatories to the Defendant, State Farm Fire and Casualty Company, to be answered separately and fully, in writing, under oath and in accordance with Rules of Civil Procedure O.C.G.A. § 9-11-33. You are instructed to provide answers to the following interrogatories within forty-five (45) days of service of this request.

### <u>GENERAL INSTRUCTIONS</u>

1. You are required to answer and verify the following interrogatories within forty-five (45) days of the date of service.

2. Each paragraph below shall operate and be construed independently; and, unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3. In answering these discovery requests, you are required to furnish all information available to You (not merely such information as you know of your own personal knowledge), including information in the possession of your attorneys and accountants, other persons

Page | 1

directly or indirectly employed by or connected with you or your attorneys or accountants, or anyone else acting on your behalf or otherwise subject to your control.

4. The obligation to answer the interrogatories is intended to be of a continuing nature, and you are required by O.C.G.A. § 9-11-26 to reasonably amend your response if you learn that any prior response is in some material respect incomplete or incorrect, and if the additionally or corrective information has not otherwise been made known to Plaintiff during the discovery process or in writing.

5. You are instructed that a failure by you to make, amend, or supplement a response in a timely manner or to otherwise comply with O.C.G.A. § 9-11-26 may result in sanctions against You.

6. The singular includes the plural number, and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is distorted by a change of tense.

## DEFINITIONS

As used in these interrogatories, the terms listed below are defined as follows:

1. "Document" or "documents" means any writing of any kind, including originals and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including without limitation correspondence, memoranda, notes, desk calendars, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversation, telephone calls, meetings or other communications, bulletins, magazines, publications, printed matter, photographs, computer printouts,

teletypes, faxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recordings, transcripts, graphic or aural records or representations of any kind, and electronic, mechanical or electric records or representations of any kind, or which you have knowledge or which are now or were formally in your actual or constructive possession, custody or control. "Communication" shall mean and include any oral or written utterance, notation, or statement of any nature whatsoever, including but not limited to correspondence, personal conversation, telephone calls, dialogues, discussions, interviews, consultations, telegrams, telexes, cables, memoranda, agreements, notes, and oral, written, or other understandings or agreements. This shall include all written, recorded, or signed statements of any party, including the Policyholder, any adjuster, subcontractor, witnesses, investigators, or agents, representative, or employee of the parties concerning the subject matter of this action.

2. "Identify" shall mean:

    a.   when used to refer to a document, means to state the following:

        1. The subject of the document;

        2. The title of the document;

        3. The type of document (e.g., letter, memorandum, telegram, chart);

        4. The date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date with reference to other events;

        5. The identity of the person or persons who wrote, contributed to, prepared or originated such document; and

        6. The present or last known location and custodian of the document.

b. when used in reference to a *person*, "identify" means to state to the fullest extent possible the person's name, present or last known address, present or last known telephone number(s), and, if a natural person, the person's employer and position of employment at the time(s) in question.

c. when used in reference to a *conversation* or *communication*, "identify" means to state the date and length of the communication, the identity of all parties to the communication, the identity of all other witnesses to the communication, the place where the communication took place (if the communication did not take place in person, set forth the location of each party to and each witness to the communication), and the general subject matter(s) of the communication.

d. when used in reference to a *claim*, "identify" means to state the date and location the claim arose, the location the claim was defended, the names of the parties involved, the case style, the amount in controversy, and the general nature of the claim.

e. "Relating to" any given subject means any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, touches upon, or is in any manner whatsoever pertinent to that subject and supports, evidences, describes, mentions, refers to, contradicts or comprises the subject.

3. "Including" shall mean "including, but not limited to."

4. "And" and "or" shall be construed conjunctively or disjunctively as required by the context within the scope of discovery request so as not to exclude any information that might be deemed outside the scope of the request by any other construction.

5. "Person" shall mean and include a natural person, firm, association, organization, partnership, business trust, corporation, public or private, or government entity.

6. "Parties" includes all named parties in this litigation and their agents, employees, servants, officers, and directors.

7. "Plaintiff's" and "Policyholder" means Plaintiff's Policyholder and his/her/its employees, representative, agents, employees, servants, officers, and directors.

8. "You," "Your," "Defendant," and "Insurance Company" means Defendant Insurance Company and its employees, representatives, agents, employees, servants, officers, directors, and each person presently or formerly acting or authorized to act on its behalf.

9. "Policy" means Policy No. 11-BZ-U116-1 issued by State Farm Fire and Casualty Company.

10. "Broker" means an insurance broker, excess/surplus lines broker, licensed insurance agent, managing general agent, or other insurance intermediary involved in the purchase, sale, negotiation, or placement of the Policy.

11. "Coverage Letter(s)" means the correspondence from You to Policyholder dated anytime, regarding Your position as to coverage for the Loss.

12. "Loss" means the event on or around April 19, 2019, in which Policyholder suffered property damage and has consequently incurred extra expense and business income losses.

13. "Policyholder's Claim" or "Claim" shall refer to the claim made by Policyholder to Insurance Company for direct physical loss or direct physical damage to the insured property located at 15 Heritage Way, McDonough, GA 30253.

14. "Possession, custody or control" includes the joint or several possession, custody or control not only by the person to whom these interrogatories are addressed, but also the joint or

several possession, custody or control by each or any other person acting or purporting to act on behalf of the person, whether as employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

## **INTERROGATORIES**

1.

Identify any and all persons involved in any way whatsoever in the investigation, adjustment, and handling of Plaintiff's claim for insurance benefits arising from the collapse loss on or about April 19, 2019, and for each, please include:

    (a) His/her name, place of employment, address, and telephone number;

    (b) His/her title, license(s), and certification(s);

    (c) The date his/her involvement in this claim commenced;

    (d) The date his/her involvement in this claim concluded; and

    (e) A description his/her involvement in this claim.

(This Interrogatory seeks the name of every employee of Defendant who had anything to do with the claim, including the adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, and all members of any review committee or claims committee).

2.

If any individual identified in your answer to Interrogatory No. 1 is or was your employee, agent, or representative, please state whether said individual has been promoted, demoted, terminated, or transferred from April 19, 2019 to present; describe in detail the change in employment status of each such individual, including the circumstances of the person's

employment before and after the change in status; and provide the last-known residence address and telephone number or place of current employment of each such past former employee.

3.

Describe each and every investigative step conducted by you, or by anyone on your behalf, regarding Plaintiff's insurance claim, beginning with the date and method you received notice of the subject claim.   Identify any and all documents and correspondence (paper or electronic) generated, obtained, or otherwise placed in your possession, in the course of your investigation.

4.

Please identify the individual(s) who have final authority to authorize settlement of this claim, and for each, please list their name, place of employment, position, telephone number, and email address.

5.

State with specificity any and all applicable building codes (state, county, city, or municipal) and engineering industry standards and practices for the investigation, evaluation, and repair/remediation of damages caused by collapse to Plaintiff's Insured Property you relied upon during your investigation of this claim, and state:

(a) The name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these industry standards or practices; and

(b) Identify all documents that support or explain any of these building codes, engineering industry standards, and practices.

(c) If you do not have an answer to this Interrogatory, please affirmatively state that no such building codes, engineering industry standards or practices were relied upon for the investigation, evaluation, and repair/remediation of Plaintiff's damages.

6.

Identify each and every person that you expect to call as an expert witness at trial, and for each, please state: the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion; the data or other information considered by the expert in forming their opinions; whether a written report has been prepared; and identify the data or other information considered by the expert in forming their opinions & all documents you furnished to the expert.

7.

If you have retained or employed an expert in anticipation of litigation or preparation for trial who is not expected to be called as a witness at trial, please identify said expert(s), and for each, please state their address and contact information.

8.

State the following concerning notice of claims and timing of payment:

(a) The date and manner in which you received notice of the claim.

(b) The date and manner in which you acknowledged receipt of the claim.

(c) The date and manner in which you commenced investigation of the claim.

(d) The date and manner in which you requested from the claimant all items, statements, and forms that you reasonably believed, at the time, would be required from the claimant.

(e) The date and manner in which you notified the claimant in writing of the acceptance or rejection of the claim.

(f) The date, amount, and reason for any insurance proceed payments you have made to the Plaintiff.

9.

Has Plaintiff's claim for insurance benefits been rejected or denied? If so, state the reasons for denying the claim.

10.

Please identify any and all written procedures or policies (including document(s) maintained in electronic form) you maintained for your internal or third party adjusters to use in connection with handling property and casualty claims in the state of Georgia arising out of the Plaintiff's damage it suffered as a result of the collapse event on April 19, 2019.

11.

Please state with specificity when (approximate date) and why did you anticipate litigation with respect to Plaintiff's cause of action, and state:

(a) The name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts; and

(b) Identify all documents that support or explain any of these facts.

12.

Identify any and all documents (including those maintained electronically) relating to the investigation or handling of a claim for collapse insurance benefits in the state of Georgia that you routinely generated during the course of the investigation and handling of a claim (e.g. Investigation Reports; z-records; reserve sheet; electronic claims diary; a claims review report; any team report relative to this claim) from January 1, 2019 to the present, and state whether you generated any of these documents during the course of investigating and handling Plaintiff's claim.

13.

Have any documents (including those maintained electronically) relating to the investigation or handling of Plaintiff's claim for insurance benefits been destroyed or disposed of? If so, please identify what, when and why the document was destroyed, and describe your document retention policy.

14.

Do you contend that the insured premises were damaged by any excluded peril? If so, state in detail your factual basis for this contention, and identify any documents which support your contention.

15.

Do you contend that any act or omission by the Plaintiff voided, nullified, waived or breached the insurance policy in any way? If so, state in detail your factual basis for this contention, and identify any documents which support your contention.

16.

Do you contend that the Plaintiff failed to satisfy any condition, covenant, or duty of the policy in any way? If so, identify each condition, covenant, or duty of the Policy which you contend the Plaintiff failed to satisfy, and for each, state the factual and legal basis for your contention(s) that the Plaintiff has not satisfied that particular condition or duty and identify all of the documents relating to your assertion and all persons with knowledge of such facts.

17.

Do you evaluate the performance of the personnel involved in handling Plaintiff's claim (including, but not limited to, claims representative, claims adjuster, independent adjuster,

manager)? If so, state what performance measures are used for said personnel, and describe your bonus or incentive plan for said personnel.

18.

Identify any portion of the Loss, as set forth in Plaintiff's Claim that you contend is not covered by the Policy. Include in your answer the specific amounts you contend are not covered, and for each such amount, please identify all facts, including exclusions or other provisions of the Policy, supporting your contention that no coverage exists.

19.

Do you contend that the Plaintiff has failed to mitigate any damages? Unless your answer is anything other an unqualified negative, identify the factual basis for your contention that the Plaintiff has failed to mitigate. Include in your answer identification of all documents relating to your assertion and all persons with knowledge of the facts averred in your answer.

20.

Do you contend that the Plaintiff failed to cooperate with the investigation or settlement of the claim? Unless your answer is anything other than an unqualified negative, state, explain, and describe the factual and legal basis for your contention that the Plaintiff failed to cooperate with the investigation or settlement of the claim.

21.

With regards to your relationship with the Policyholder(s):

(a) When did the Policyholder(s) first obtain a policy of insurance from you?

(b) When did the Policyholder(s) first apply for a policy of insurance from you for the Insured Property? Was their application accepted? Why or why not?

(c) What underwriting documents were created in the formation of the Policyholder(s)'s original policy of insurance for the Insured Property?

(d) Did you inspect the Insured Property prior to issuing your first policy of insurance for the Insured Property? If so, please specifically identify when the inspection occurred; the name, place of employment, and address of the individual who conducted the inspection; and whether a report was drafted as a result of this inspection. If not, please affirmatively state that no such inspection occurred.

(e) Did you inspect the Insured Property prior to renewing the Policy for the policy period at issue in this claim? If so, please specifically identify when the inspection occurred; the name, place of employment, and address of the individual who conducted the inspection; and whether a report was drafted as a result of this inspection. If not, please affirmatively state that no such inspection occurred.

(f) Have you issued a Notice of Non-Renewal or Cancellation of the Plaintiff's Policy for the Insured Property? If so, please identify the date of such correspondence; the specific type of correspondence; your purported reasoning for said correspondence or action; and the specific facts or documents you relied upon in drafting said correspondence or action.

22.

Do you contend that the Plaintiff provided false, incomplete, or deficient information that was material to the underwriting of your Policy? If your answer is anything other than an unqualified negative, state with specificity the factual and legal basis for your contention, and identify all documents that relate to your response.

23.

Identify any and all photographs, audiotape recordings, videotape recordings, or written statements taken or obtained during the course of your investigation of the claim. In your response, please describe in detail what each such document depicts, and state the date when each such photograph, statement, or recording was taken, made, or obtained.

24.

With regards to your Answer and Affirmative Defenses to Plaintiff's Complaint:

(a) State the good faith factual basis for your Affirmative Defense(s), and identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by you to refer or relate in any way to the facts you contend support your Affirmative Defense(s);

(b) Describe comprehensively and in detail all bases, both factual and otherwise, documents, notes, memorandum, reports, or other documentation in whatever form, that support or substantiates your denials of any of the paragraphs of Plaintiff's Complaint. Please state:

   i. The name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts; and

   ii. Identify all documents that support or explain any of these facts.

## <u>REQUEST FOR PRODUCTION OF DOCUMENTS</u>

## <u>INSTRUCTIONS</u>

1. You are instructed to promptly amend or supplement any and all responses made hereto if you learn that any response to these interrogatories, requests for production, and/or requests for admission was incomplete when made or is no longer complete or correct.

Page | 13

2. Each document request shall be deemed to call for the production of the original document or documents. If the original is not available, then a copy shall be produced if it differs in any respect from the original or from other copies (e.g., by reason of handwritten, typed, or printed notes or comments having been added to the copy that do not appear on the original).

3. If a request seeks a document that, to your knowledge, does not exist, please state that the document does not exist.

4. Without interfering with the readability of a document, please identify by Bates number or other means the request(s) to which the document is responsive.

5. For each document responsive to any request that is withheld under a claim of privilege, provide a privilege log containing the following information:

    a. The date the document was prepared or created;

    b. The name and title of the author or authors of the document;

    b. A summary of the subject matter of the document;

    c. The identity of each person or persons (other than those giving solely stenographic or clerical assistance) who assisted the author or authors in creating the document;

    d. The identity of each person to whom the document or the contents of the document have been communicated (either intentionally or inadvertently), the date(s) of such communication, the title of each such person, and the date of such communication;

    e. A statement of the basis on which privilege is claimed; and

    f. The identity and title, if any, of the person or persons providing the information requested in subsections (a) through (f) above.

## DEFINITIONS

Please refer to the definition section listed above.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.

All documents responsive to Plaintiff's Interrogatories, identified in your responses to Plaintiff's Interrogatories, or otherwise reviewed or relied upon in responding to Plaintiff's Interrogatories.

2.

The entire claim files from the home, regional, & local offices, third party adjusters/adjusting firms, and ladder assists regarding the claim that is subject of this matter, including copies of the file jackets, "field" files and notes, and drafts of documents contained in the file.

3.

A certified copy of the insurance policy pertaining to the claims involved in this suit.

4.

The Complaint Log you are required to keep for collapse complaints in the state of Georgia filed over the past three years.

5.

Your written procedures or policies (including document(s) maintained in electronic form) that pertain to the handling of collapse claims in the state of Georgia from April 19, 2019 to present. If the party answering this request is an independent adjuster, produce the requested documents for both the independent adjusting company and the party [carrier] that hired you with respect to this claim.

6.

Any and all structural reports in your possession for the Insured Property on April 19, 2019, regardless of whether you relied upon them in making your claims decision in this matter.

7.

The Operation Guides which relate to the handling of collapse claims in the state of Georgia in effect from April 19, 2019 to present. If the party answering this request is an independent adjuster, produce the requested documents for both the independent adjusting company and the party [carrier] that hired you with respect to this claim.

8.

The field notes, measurements, electronic diary, and file, including all electronic and paper notes created, obtained, or maintained by the claims personnel, contractors, adjusters, and engineers who physically inspected or adjusted Plaintiff's claim for the subject property.

9.

The emails, instant messages, and internal correspondence pertaining to Plaintiff's underlying claim.

10.

Defendant's internal newsletters, bulletins, publications and memoranda relating to policies and procedures for handling collapse claims in the state of Georgia that were issued from January 1, 2019 through the present, including, but not limited to, memoranda issued to claims adjusters.

11.

The price guidelines that pertain to the handling of claims arising out of collapse claims in the state of Georgia. In the event you utilize published guidelines of "off the shelf" software,

without modification, as your guidelines, you may respond by simply identifying the name, version, and/or edition of the published guidelines you use.

12.

The documents, manuals, and training materials, including audio and/or video tapes used in training, overseeing, or supervising your personnel employed in adjusting property claims in the state of Georgia and in effect from January 1, 2019 to the present.

13.

"Pay sheet," "Payment Log," or list of payments, as well as copies of any and all checks or payments made on Plaintiff's claim.  This includes, but is not limited to, all payments issued to Plaintiff or Plaintiff's agents or representatives; all payments issued to independent adjusters, ladder assists, and engineers retained in your adjustment of this claim; and all expenses incurred by you in your adjustment of this claim.

14.

The documents reflecting reserves applied to the subject claim.

15.

The bonus or incentive plan for the managers, adjusters, and claims representatives responsible for collapse claims in the state of Georgia in effect for the time period of January 1, 2019 through the present.

16.

For the past five years, the portions of the personnel file of the adjuster(s) involved in handling Plaintiff's claim that pertain to disciplinary actions associated with claims handling, and performance under a bonus or incentive plan.

17.

The documents reflecting your criteria and procedures for the selection and retention of independent adjusters and engineers handling collapse claims in the state of Georgia from January 1, 2019 through the present.

18.

If a third party engineer evaluated the subject property, provide the documents that show the number of other matters in which the same engineer or engineering firm were retained by you to evaluate other properties in the state of Georgia over the past five years.

19.

The contract between the Defendant insurer and the Defendant third party adjusting company.

20.

The correspondence between the Defendant insurer and the third party adjusters/adjusting firms, engineers and other estimators who worked on the claim that pertain to the Claim at issue.

21.

All documents submitted to or received from each person you expect to call as an expert witness at trial, including, but not limited to, a list of all publications authored by the witness, a list of all other cases in which the witness has testified as an expert at trial or by deposition, a current *curriculum vitae* for the witness, all reports generated by the witness, and all documents and tangible things reasonably relied upon by the witness in forming his or her expert opinion.

22.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 1.

23.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 2.

24.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 3.

25.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 5.

26.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 11.

27.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 12.

28.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 21.

29.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 23.

30.

All documents and tangible things identified, created, or relied upon by you in your response to Interrogatory No. 24.

It is requested that the aforesaid production be made within forty-five (45) days of service of this request at the offices of The Huggins Law Firm, LLC, 110 Norcross Street, Roswell, GA 30075.

Dated, this 23rd day of March, 2 0 2 0.

RESPECTFULLY SUBMITTED,

For: The Huggins Law Firm, LLC

J. Remington Huggins, Esq.
Georgia Bar No.: 348736
Michael D. Turner, Esq.
Georgia Bar No.: 216414
Attorneys for the Plaintiff
110 Norcross Street
Roswell, GA 30075
(o) (770) 913-6229
(e) remington@lawhuggins.com
(e) mdturner@lawhuggins.com

## VERIFICATION

STATE OF _____   )

                                                           ss:

COUNTY OF _____   )

_____ being duly sworn, deposes and says that I am the Defendant in this action, that I have read the foregoing answers to interrogatories and request for production of documents and know the contents thereof, and the same are true to my knowledge, information and belief.

Therefore, I certify under penalty of perjury under the laws of the State of Georgia that the foregoing Answers/Responses to the Plaintiff's First Set of Interrogatories and Request for Production of Documents Directed to the Defendant are true and correct.

_____
Signature of Authorized Agent for Defendant
Print Authorized Agent for Defendant's Name: _____

Sworn to and subscribed before me this the _____ day of _____ 2 0 2 0 __.

_____
Notary Public: _____

E-FILED IN OFFICE
CLERK OF STATE COURT
GWINNETT COUNTY, GEORG
20-C-01990-S
3/23/2020 11:57 AI

*[signature]*
CLERK OF STATE COUR

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

MONTE D. BONE,                          )
                                        )
    **Plaintiff,**                    )
                                        )        **CIVIL ACTION FILE NO.:**
v.                                      )           20-C-01990-S2
                                        )        _____
**STATE FARM FIRE AND CASUALTY**        )
**COMPANY,**                            )
 a foreign corporation,                )
                                        )
    **Defendant.**                   )

### CERTIFICATE OF SERVICE

    This is to certify that I have served the foregoing upon the Defendant State Farm Fire and Casualty Company ("State Farm") by serving them with the ***Summons, Complaint and Exhibits***, as well as ***Plaintiff's First Set of Interrogatories and Request for Production of Documents*** in accordance with the Court's rules to the Defendant State Farm at the address listed below:

        **Corporation Service Company**
       **Registered Agent for Defendant State Farm**
       **40 Technology Parkway South, Suite 300**
          **Norcross, GA 30092**

Respectfully submitted, this the 23rd day of March, 2 0 2 0.

                 For: The Huggins Law Firm, LLC

                 *[signature]*
                 _____
                 J. Remington Huggins, Esq.
                 Georgia Bar No.: 348736
                 Michael D. Turner, Esq.
                 Georgia Bar No.: 216414
                 Attorneys for the Plaintiff
                 110 Norcross Street
                 Roswell, GA 30075
                 (o) (770) 913-6229
                 (e) remington@lawhuggins.com
                 (e) mdturner@lawhuggins.com

E-FILED IN OFFICE - JM
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**20-C-01990-S2**
**5/7/2020 1:59 PM**

CLERK OF STATE COURT

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

MONTE D. BONE,                        )(
                                      )(
    Plaintiff,                        )(
                                      )(
v.                                    )(          CIVIL ACTION
                                      )(          FILE NO. 20-C-01990-S2
STATE FARM FIRE AND,                  )(
CASUALTY COMPANY,                     )(
                                      )(
    Defendant.                        )(

## STATE FARM FIRE AND CASUALTY COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES

COMES NOW State Farm Fire and Casualty Company ("State Farm"), Defendant in the above-styled action, and files its Answer and Affirmative Defenses to Plaintiff Monte D. Bone's ("Plaintiff's") Complaint, showing this Court as follows:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim against State Farm under State Farm Homeowners Policy No. 11-BZ-U116-1 ("Policy") which is the subject of this Complaint.

### SECOND AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to assert a claim for breach of contract against State Farm for reported damage ("Loss") to property located at 15 Heritage

Way, McDonough, Georgia 30253-6065 ("Property"), which is the subject of Plaintiff's Complaint, Plaintiff's action should be dismissed because State Farm did not breach its contract with Plaintiff and, at all times relevant to this action, has acted in accordance with the terms and conditions of the Policy and all applicable Georgia law.

## THIRD AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to assert a bad faith claim against State Farm pursuant to O.C.G.A. § 33-4-6, Plaintiff may not recover because his claim is legally and factually insufficient. State Farm has, at all times, acted in good faith with respect to Plaintiff's claim.

## FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to assert a bad faith claim against State Farm pursuant to O.C.G.A. § 33-4-6, Plaintiff is barred from asserting any such bad faith demand because he failed to satisfy the procedural requirements of O.C.G.A. § 33-4-6, including, but not limited to, asserting any proper and timely bad faith demand and waiting the statutory period of 60 days prior to filing suit.

## FIFTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to assert claims against State Farm pursuant to O.C.G.A. §§ 13-6-11 and 9-15-14, Plaintiff cannot recover because

O.C.G.A. § 33-4-6 is the exclusive remedy for any alleged wrongful failure to pay an insurance claim.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim against State Farm for attorneys' fees pursuant to O.C.G.A. § 13-6-11 upon which relief can be granted.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim against State Farm for punitive damages pursuant to O.C.G.A. § 51-12-5.1 upon which relief can be granted.

## EIGHTH AFFIRMATIVE DEFENSE

State Farm is not indebted to Plaintiff for the sum sought or in any amount whatsoever.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovering the amount asserted in his Complaint because these alleged damages are speculative and Plaintiff did not actually incur and/or is not likely to incur these damages.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover the damages set forth in his Complaint because this amount does not reflect the reasonable cost to replace or repair the damage resulting from a covered cause of loss to Plaintiff's Property with equivalent construction for equivalent use and to return the Plaintiff to his pre-loss condition.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from State Farm under the Policy because the Complaint seeks recovery for pre-existing damages and, therefore, was not filed or served within the suit limitation period.

> 6. **Suit Against Us.** No action shall be brought against *us* unless there has been full compliance with all of the policy provisions.   The action must be started within one year after the date of loss or damage.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from State Farm under the Policy because the reported damage to Plaintiff's Property did not result from Loss Insured by the Policy. The Policy provides in **SECTION I – LOSSES INSURED**:

> ### COVERAGE A – DWELLING
>
> *We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from State Farm because the reported damage to Plaintiff's Property did not result from a covered cause of loss.   The Policy provides in **SECTION I – LOSSES NOT INSURED**:

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

   c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

      . . .

      (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

   . . .

   g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

   h. corrosion, electrolysis, or rust;

   i. wet or dry rot;

   . . .

   k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors roofs, or ceilings;

   . . .

However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the ***residence premises***, arises from any natural or external forces, or occurs as a result of any combination of these:

   a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a ***building structure*** or other structure.

   b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

      (1) earthquake;

      (2) landslide, mudslide, or mudflow;

      (3) sinkhole or subsidence;

      (4) movement resulting from:

         (a) improper compaction;

         (b) site selection;

         (c) natural resource extraction activities; or

(d) excavation;

(5) erosion;

(6) pressure by surface or subsurface earth or fill; or

(7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

However, **we** will pay for any accidental direct physical loss by fire, explosion other than explosion of a volcano, or theft resulting from earth movement, provided the resulting loss is itself a *loss insured*.

. . .

c. **Water**, meaning:

(1) flood;

(2) surface water.  This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

. . .

(7) water or sewage from outside the ***residence premises*** plumbing system that enters through sewers or drains, or water or sewage that enters and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a ***building structure***, sidewalk, driveway, swimming pool, or other structure;

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

. . .

d. **Neglect**, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

. . .

g. ***Fungus***, including

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the ***residence premises*** or location of the rebuilding, repair, or replacement of that property, by ***fungus***;

(2) any remediation of ***fungus***, including the cost or expense to:

(a) remove the ***fungus*** from covered property or to repair, restore, or replace that property;

(b) tear out and replace any part of the ***building structure*** or other property as needed to gain access to the ***fungus***; or

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the ***fungus***; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of ***fungus***, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

. . .

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

. . .

b. defect, weakness, inadequacy, fault, or unsoundness in:

    (1) planning, zoning, development, surveying, or siting;

    (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

    (3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

    (4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this section.

Further, the Policy provides in **DEFINITIONS**:

3. "*building structure*" means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary

materials including but not limited to tarps, plastic sheeting, or other similar material.  A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

A *building structure* includes:

a.  the foundation supporting the structure, including:

    (1) slabs;

    (2) basement walls;

    (3) crawl space walls;

    (4) footings; and

    (5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b.  wall-to-wall carpeting attached to the structure.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from State Farm under the Policy because the reported damage to Plaintiff's Property did not result from an additional coverage for collapse.  The Policy provides in **SECTION I – ADDITIONAL COVERAGES**:

The following Additional Coverages are subject to all of the terms, provisions, exclusions, and conditions of this policy.

. . .

11. *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a **building structure** or any part of a **building structure**.

   a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a **building structure** of any part of a **building structure**. Collapse does not include any of the following:

     (1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

     (2) substantial structural impairment;

     (3) imminent or threatened collapse;

     (4) a **building structure** or any part of a **building structure** that is in danger of falling down or caving in; or

     (5) a part of a **building structure** that is standing even if:

       (a) it has separated from another part of the **building structure**; or

       (b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

   b. The collapse must be directly and immediately caused by one or more of the following:

     (1) perils described in **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**. These perils apply to **building structures** covered under Coverage A or

Coverage B for loss insured by this Additional Coverage;

(2) decay or deterioration of, or damage from animals, birds, or insects to:

(a) a connector; or

(b) a structural member of a ***building structure***;

The decay, deterioration, or damage must be hidden from view and unknown to all ***insureds*** prior to the collapse.

(3) the weight of contents, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the ***building structure***, if the collapse occurs during the course of the construction of the ***building structure***.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a ***building structure*** or any part of a ***building structure***.

This coverage does not increase the limit applying to the damaged property.

Further, the Policy provides in **DEFINITIONS**:

3. "***building structure***" means a structure fully enclosed with permanent walls and a roof.  A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material.  A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent ***loss insured***, using materials such as tarps, plastic sheeting, or other similar material, is still considered a ***building structure***.

A ***building structure*** includes:

a. the foundation supporting the structure, including:

(1) slabs;

(2) basement walls;

(3) crawl space walls;

(4) footings; and

(5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b. wall-to-wall carpeting attached to the structure.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Plaintiff's claim is barred and Plaintiff cannot recover because he failed to satisfy the duties under the Policy in **SECTION I – CONDITIONS**:

2. **Your Duties After Loss.**  After a loss to which this insurance may apply, you shall see that the following duties are performed:

a.  give immediate notice to us or our agent.  Also notify the police if the loss is caused by theft.  Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b.  protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

c.  prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d.  as often as *we* reasonably require:

   (1) exhibit the damaged property;

   (2) provide *us* with records and documents we request and permit us to make copies;

   (3) submit to and subscribe, while not in the presence of any other *insured*:

      (a) statements; and

      (b) examinations under oath; and

   (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

e.  submit to *us*, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1) the time and cause of loss;

(2) interest of the *insured* and all others in the property involved and all encumbrances on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged building and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

. . . .

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover from State Farm under the Policy because Plaintiff failed to satisfy the conditions precedent to recovery.   Specifically, the Policy provides in **SECTION I – CONDITIONS** as follows:

6. **Suit Against Us.** No action shall be brought against *us* unless there has been full compliance with all of the policy provisions. . . . .

## SEVENTEENTH AFFIRMATIVE DEFENSE

State Farm is not liable to Plaintiff because Plaintiff failed to properly mitigate his damages.

## EIGHTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff attempts to impose duties upon State Farm aside from those set forth in the Policy, Plaintiff's claims fail in both fact and law. Georgia law does not impose extra-contractual duties on insurers when adjusting claims asserted by insureds.  Moreover, at all times relevant hereto, State Farm acted in good faith and in accordance with the terms and conditions of the Policy.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver, and estoppel.

## TWENTIETH AFFIRMATIVE DEFENSE

State Farm denies that the damages alleged in the Complaint were proximately caused by any conduct on the part of State Farm.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The facts and circumstances forming the basis of Plaintiff's Complaint were brought about by and as a result of Plaintiff's own conduct and Plaintiff, therefore, is estopped and precluded from recovering herein.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The proximate cause of the incident in this lawsuit was the negligence of another or others not subject to the control of State Farm, and for whose acts State Farm is not responsible, with the result that Plaintiff is not entitled to recover from State Farm.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff may not recover from State Farm to the extent that Plaintiff's damages resulted from his own negligence or the negligence of third parties.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries and damages, if any, were solely or proximately caused by Plaintiff's own contributory negligence, which bars or reduces Plaintiff's claims herein in an amount to be determined by the trier of fact.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff waived his right to insist upon State Farm's compliance with the Policy due to his own failure to comply with the Policy conditions.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to establish a cause of action against State Farm based on the provisions of Georgia's Unfair Claims Settlement Practices Act contained in O.C.G.A. § 33-6-34, Plaintiff fails to state a claim upon which relief

could be granted.  By its express terms, the Unfair Claims Settlement Practices Act does not create a private cause of action.  O.C.G.A. § 33-6-37.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

To the extent that Plaintiff seeks to recover from State Farm in tort, Plaintiff is barred from recovery as the relationship between Plaintiff and State Farm is solely between State Farm and Plaintiff and is strictly contractual in nature and does not support an action in tort.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's claims against State Farm should be dismissed and Plaintiff cannot recover because Plaintiff failed to join indispensable party.  The Policy states in **DEFINITIONS**:

21. "*you*" and "*your*" mean the person or persons shown as "Named Insured" in the ***Declarations***.  If a "Named Insured" shown in the ***Declarations*** is a human being, then *you* and *your* include:

    a.  a spouse of a "Named Insured";

    b.  a party to a civil union with a "Named Insured";

    c.  a domestic partner of a "Named Insured"; or

    d.  a person in a substantially similar legal relationship with a "Named Insured";

    if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

Page **18** of **31**

Because the Plaintiff failed to join the Plaintiff's wife her absence would prejudice State Farm, would impair State Farm's ability to protect her interest, and would leave State Farm subject to a substantial risk of incurring inconsistent obligations under the Policy and applicable law.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff's spouse is not a party to this action, Plaintiff cannot recover damages from State Farm beyond his insurable interest.  The Policy states in **SECTION I – CONDITIONS**:

1. **Insurable Interest and Limit of Liability**.  Even if more than one person has an insurable interest in the property covered, ***we*** will not be liable:

   a. to the ***insured*** for an amount greater than the ***insured's*** interest; or

   b. for more than the applicable limit of liability.

## THIRTIETH AFFIRMATIVE DEFENSE

State Farm expressly reserves the right to assert any and all affirmative defense(s) and matter(s) in avoidance as may be disclosed during the course of additional investigation and discovery.  Subject to and without waiving any of its other respective rights, jurisdictional or legal defenses, or objections, State Farm responds to the specific averments contained in the individual and enumerated paragraphs of the Complaint as follows:

**PARTIES**

1.

State Farm is without sufficient information to admit or deny the allegations contained in Paragraph 1 of Plaintiff's Complaint and therefore these allegations are denied.

2.

State Farm admits the allegations contained in Paragraph 2 of Plaintiff's Complaint.

**JURISDICTION AND VENUE**

3.

State Farm admits the allegations contained in Paragraph 3 insofar as State Farm does not dispute the personal jurisdiction of this Court.   Any other allegations contained in Paragraph 3 of Plaintiff's Complaint not specifically admitted are denied.

4.

State Farm admits the allegations contained in Paragraph 4 of Plaintiff's Complaint insofar as State Farm does not dispute venue in this Court.  Any other allegations contained in Paragraph 4 of Plaintiff's Complaint not specifically admitted are denied.

5.

State Farm denies the allegations contained in Paragraph 5 of Plaintiff's Complaint as stated but does not dispute the jurisdiction of and venue in this Court.

## THE POLICY

6.

In response to Paragraph 6 of Plaintiff's Complaint, State Farm admits that Exhibit A is a true and accurate copy of the Policy.  By way of further response, State Farm admits that, at all times relevant hereto, it insured Plaintiff's Property located at 15 Heritage Way, McDonough, Georgia 30253-6065, subject, however, to all terms and conditions of the Policy and all applicable law.  In further response to Paragraph 6, State Farm admits that the Policy provided coverage for certain "Losses Insured" to the "Dwelling" and to "Personal Property," among other Coverages, as set forth in the Policy and subject to all other terms of the Policy and all applicable Georgia law.  Any other allegations contained in Paragraph 6 of Plaintiff's Complaint not specifically admitted are denied.  State Farm specifically denies that Plaintiff asserted a claim for damage to personal property.

7.

State Farm denies the allegations contained in Paragraph 7 of Plaintiff's Complaint as stated.  State Farm further contends that the Policy terms and conditions speak for themselves subject, moreover, to all applicable Georgia law.

Any other allegations contained in Paragraph 7 of Plaintiff's Complaint not specifically admitted are denied.

8.

State Farm denies the allegations contained in Paragraph 8 of Plaintiff's Complaint as stated. State Farm further contends that the Policy terms and conditions speak for themselves subject, moreover, to all applicable Georgia law. Any other allegations contained in Paragraph 8 of Plaintiff's Complaint not specifically admitted are denied.

**COLLAPSE DAMAGE TO THE INSURED PROPERTY**

9.

State Farm admits that the Policy was in effect on April 19, 2019, subject, however, to its terms and conditions and all applicable law. State Farm denies the remaining allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.

In response to Paragraph 10 of Plaintiff's Complaint, State Farm admits that Plaintiff initiated Claim No. 11-01X7-29Z ("Claim") on April 23, 2019, for damage that allegedly occurred on April 19, 2019. In further response to Paragraph 10 of Plaintiff's Complaint, State Farm admits that its employee, Bryan Van Camp, investigated aspects of Plaintiff's Loss and Claim. Any other

allegations contained in Paragraph 10 of Plaintiff's Complaint not specifically admitted are denied.

## 11.

In response to Paragraph 11 of Plaintiff's Complaint, State Farm admits that the Plaintiff exhibited the Property on April 25, 2019, June 3, 2019, and December 20, 2019. Any other allegations contained in Paragraph 11 of Plaintiff's Complaint not specifically admitted are denied.

## 12.

In response to Paragraph 12 of Plaintiff's Complaint, State Farm admits only that Bryan Van Camp inspected the Property on April 25, 2019. Any other allegations contained in Paragraph 12 of Plaintiff's Complaint not specifically admitted are denied.

## 13.

State Farm denies the allegations contained in Paragraph 13 of Plaintiff's Complaint as stated.

## 14.

State Farm admits that Exhibit B is a true and correct copy of a letter from State Farm to Plaintiff's public adjuster, Richie Brown. Any other allegations contained in Paragraph 14 of Plaintiff's Complaint not specifically admitted are denied.

15.

State Farm denies the allegations contained in Paragraph 15 of Plaintiff's Complaint.

16.

State Farm denies the allegations contained in Paragraph 16 of Plaintiff's Complaint as stated.   By way of further response, State Farm admits that it received the letter identified as Exhibit C though it denies the allegations contained in Exhibit C.   Any other allegations contained in Paragraph 16 of Plaintiff's Complaint not specifically admitted are denied.

17.

State Farm denies the allegations contained in Paragraph 17 of Plaintiff's Complaint.

18.

State Farm denies the allegations contained in Paragraph 18 of Plaintiff's Complaint.

19.

State Farm denies the allegations contained in Paragraph 19 of Plaintiff's Complaint.

20.

State Farm denies the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.

State Farm denies the allegations contained in Paragraph 21 of Plaintiff's Complaint.

## COUNT I: BREACH OF CONTRACT

22.

State Farm hereby incorporates by reference its answers to Paragraphs 1 through 21 as if each were fully set forth herein.

23.

State Farm denies the allegations contained in Paragraph 23 of Plaintiff's Complaint.

24.

State Farm denies the allegations contained in Paragraph 24 of Plaintiff's Complaint.

25.

State Farm denies the allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.

State Farm denies the allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.

State Farm denies the allegations contained in Paragraph 27 of Plaintiff's Complaint.

28.

State Farm denies the allegations contained in Paragraph 28 of Plaintiff's Complaint.

29.

State Farm denies the allegations contained in Paragraph 29 of Plaintiff's Complaint.

30.

State Farm denies the allegations contained in Paragraph 30 of Plaintiff's Complaint.

31.

Paragraph 31 of Plaintiff's Complaint does not contain allegations that require a response from State Farm, but State Farm denies the relief sought and any allegations relied upon in seeking such relief.

## COUNT II: BAD FAITH

### 32.

State Farm hereby incorporates by reference its answers to Paragraphs 1 through 31 as if each were fully set forth herein.

### 33.

State Farm denies the allegations contained in Paragraph 33 of Plaintiff's Complaint.

### 34.

State Farm denies the allegations contained in Paragraph 34 of Plaintiff's Complaint, including all subparts.

### 35.

State Farm denies the allegations contained in Paragraph 35 of Plaintiff's Complaint.

### 36.

State Farm denies the allegations contained in Paragraph 36 of Plaintiff's Complaint.

### 37.

State Farm denies the allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.

State Farm denies the allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.

State Farm denies the allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.

State Farm denies the allegations contained in Paragraph 40 of Plaintiff's Complaint.

41.

State Farm denies the allegations contained in Paragraph 41 of Plaintiff's Complaint.

42.

State Farm denies the allegations contained in Paragraph 42 of Plaintiff's Complaint.

**COUNT III: ATTORNEY'S FEES**

43.

State Farm hereby incorporates by reference its answers to Paragraphs 1 through 42 as if each were fully set forth herein.

44.

State Farm denies the allegations contained in Paragraph 44 of Plaintiff's Complaint.

45.

State Farm denies the allegations contained in Paragraph 45 of Plaintiff's Complaint.

**DEMAND FOR JURY TRIAL**

46.

Paragraph 46 of Plaintiff's Complaint does not contain allegations that require a response from State Farm, but State Farm denies the relief sought and any allegations relied upon in seeking such relief.

**PRAYER FOR RELIEF**

47.

State Farm denies the allegations contained in Paragraph 47 of Plaintiff's Complaint.

State Farm denies each and every remaining allegation contained in Plaintiff's Complaint not specifically admitted herein, including all of Plaintiff's requests for relief.

WHEREFORE, having fully responded to Plaintiff's Complaint, State Farm respectfully prays for the following relief:

(a)    That Plaintiff's Complaint be dismissed with prejudice;

(b)     That State Farm be awarded its attorneys' fees and costs incurred in

connection with the defense of this action; and

(c)     For such other and further relief as this Court deems appropriate.

This 7th day of May, 2020.

> Respectfully submitted,
>
> SWIFT, CURRIE, McGHEE & HIERS, LLP
>
> */s/ Thomas D. Martin*
> Thomas D. Martin
> Georgia State Bar No. 475535
> Kristen M. Vigilant
> Georgia State Bar No. 191460
> *Attorneys for Defendant*
> *State Farm Fire and Casualty Company*

Suite 300 The Peachtree
1355 Peachtree Street, NE
Atlanta, Georgia 30309
Tel:   404.874.8800
Fax:   404.888.6199
tom.martin@swiftcurrie.com
kristen.vigilant@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I have this day electronically filed the within and foregoing ***State Farm Fire and Casualty Company's Answer and Affirmative Defenses*** with the Clerk of the Court using the Odyssey eFile System which will automatically send notification to counsel of record as follows:

J. Remington Huggins, Esq.
Michael D. Turner, Esq.
Huggins Law Firm LLC
110 Norcross Street
Roswell, Georgia 30075
remington@lawhuggins.com
mdturner@lawhuggins.com

This 7th day of May, 2020.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Thomas D. Martin*
Thomas D. Martin
Georgia State Bar No. 475535
Kristen M. Vigilant
Georgia State Bar No. 191460
*Attorneys for Defendant*
*State Farm Fire and Casualty Company*

Suite 300 The Peachtree
1355 Peachtree Street, NE
Atlanta, Georgia 30309
Tel:   404.874.8800
Fax:   404.888.6199
tom.martin@swiftcurrie.com
kristen.vigilant@swiftcurrie.com